THE NIAGARA.

ACKER *v.* THE NIAGARA.

FOX *v.* SAME.

MECHANICS' & TRADERS' INS. CO. *v.* SAME.

COLES *v.* SAME.

*(District Court, S. D. New York.　April 4, 1884.)*

1. COLLISION—TOWAGE—NEGLIGENCE—DUTY.
    While tugs are not insurers of tows in their charge, and are answerable for negligence only, negligence is shown by the want of ordinary skill in navigation, and of the exercise of such care and diligence in handling the tow as a man of ordinary prudence would exercise in the protection of his own property. In making up a tow of numerous boats each is entitled to the same reasonable care for her safety as if she were the only boat in the tow.

2. SAME—POSITION OF CANAL-BOAT—HAWSER TIER.
    It is negligence to place an open-deck canal-boat, deeply loaded, in the hawser tier, for a trip up the Hudson river, with the wind blowing from the north or north-west from 15 to 18 miles per hour.

3. SAME—UNFITNESS—NOTICE.
    When notice is given, with an order for towing, that the boat is unfit to go in the front tier, those who make up the tow are bound to take notice thereof; and if put in the front tier without the captain's consent it will be at the risk of the tug.

4. SAME—CASE STATED.
    Where the captain of the canal-boat B., finding that his boat was about to be put in the front tier, protested, and desired to be put back into the dock, rather than go in the front tier, which request was disregarded, and the hawser was made fast to her by those in charge of the tug, and the B. was afterwards swamped and sunk through taking in water over her bows, *held*, that the tug was solely in fault, and that the B. could not be held jointly answerable as for a hazardous undertaking by the consent of both parties, as in the case of *The William Cox,* 9 FED. REP. 672, and *The Bordentown,* 16 FED. REP. 270

The above four libels are brought to recover damages sustained in consequence of the sinking of the canal-boat Belle in the Hudson river, between 5 and 6 in the morning of the fifth of October, 1881, while in tow of the steam-tug Niagara, near the long dock at Piermont. The Niagara belonged to what is known as Schuyler's line, which, during the season of navigation, takes a tow of numerous boats every night from New York up the North river to Albany. The Niagara left New York on the night of October 4th with a tow of 24 boats, of which four were deeply loaded, having about 200 tons aboard, and called plugs; six other canal-boats were somewhat smaller, having not over 110 to 115 tons each; twelve other boats were light, and two were light hay barges. The Belle was one of the four deeply-loaded boats called plugs, which were placed in the hawser tier, the Belle being second from the port side. The Belle was an open boat, without hatch covers; the open part of her deck was about 70 feet in

length by 9 in breadth, with coamings about six inches high around the edges. The other three boats which formed the hawser tier were covered with close hatches. The record of the weather bureau shows that the wind, from 3 o'clock that afternoon until the next forenoon, was from north-west to north, and gradually increasing from 16 miles an hour to 21 miles. After passing the Palisades, on entering the broad expanse of the Hudson at the Tappan Zee, being less under the shelter of the land, and the wind apparently about the same time veering to the northward and increasing, the tow encountered a heavy chop, from which, in the course of half an hour, the Belle, in the front tier, took in water over her bows sufficient to carry her down head-foremost. All was done that could be done on board the Belle to save her, both by pumping and by sounding a horn to give notice to the tug ahead. The horn was not heard, and pumping was of little avail. Just before she sank her lines attached to the other boats were unloosed. A few moments after sinking a part of her stern appeared again above water, and by its collision with the boats behind divided the tow, and set two of the other boats adrift. The latter were blown downward and across the river upon the rocks on the eastern shore, where they suffered injuries, on account of which the last two libels are brought, the first two being for the boat Belle and her cargo.

*E. D. McCarthy*, for E. A. Parker and Wm. Fox.

*Carpenter & Mosher*, for Mechanics' & Tradesmen's Ins. Co. and C. Sanford Coles.

*Owen & Gray*, for the Niagara.

BROWN, J. The owners of the tug-boat contend that they are not responsible for the loss, because there was no negligence on their part. They allege that it was customary to put boats like the Belle in the hawser tier; that there were no indications of tempestuous weather at the time when the tow was made up on the evening of October 4th, and that the only proper place for the Belle, a heavy and deeply-laden boat, was in the front tier, and not in the rear of lighter boats. Owners of tugs are not insurers of the tows in their charge. They are, indeed, answerable for negligence only; but negligence consists in the want of ordinary skill in navigation, and of the exercise of such care and diligence in handling the tow as a man of ordinary prudence would exercise in the preservation of his own property. Where the trip undertaken will occupy a considerable time, they are bound to take all such safeguards as are necessary to preserve the tow from loss or injury through any of the contingencies which may ordinarily be expected to arise upon the trip. The time usually occupied by tows in going from New York to Troy is about 36 hours. In commencing such a trip, sufficiently long to encounter all kinds of weather, the claimants were bound to arrange all such boats as they took in tow so that they should be reasonably safe against the contingency of a strong head-wind and heavy chop, such as caused

the loss of the Belle in this case. There is no question in my mind, despite some reservations on the part of the claimants' witnesses, that the most dangerous place for a deeply-laden open boat is the hawser tier, or along the windward side of the tow; that the Belle could have gone safely in almost any part of the inside of the tow; and that her loss is due entirely to her being put in the front tier, for which she was obviously unfit. When the order for towing the Belle was given, it was stated that she was an open boat, deeply loaded, and unfit to go in the hawser tier, and must not be placed there. When she was taken, at night, by the helper to the place where the tow was made up, and it was seen by the captain that she was about to be put in the hawser tier, he remonstrated against it with great vehemence, on the ground that, as a deeply-laden, open boat, she was unfit to go in the hawser tier. All the witnesses agree as to the master's remonstrance. Several witnesses on his side support him in the further statement that at the time of this protest he also demanded to be taken back to the dock rather than go in the hawser tier; that those making up the tow claimed the right to put the Belle where they pleased, and insisted upon doing so. Two witnesses on behalf of the claimants deny that the master demanded to be taken back to the dock; but they say that the master of the helper, the Quaker City, offered to take the Belle back to the dock if he did not want to go in the hawser tier. The libelants' witnesses deny this, and add that the captain replied that, if he was put in the hawser tier, it must be at the risk of the tug.

I must hold that this open boat, so deeply laden and with low coamings, was unfit to go in the hawser tier,—that is, that she would be safe there in mild weather only, and would be in danger of being sunk through any strong head-wind that might be met upon the trip; that these dangers were so obvious that it was negligence in the tug to put the Belle in the hawser tier; and that in all such cases the tug is chargeable in case of loss arising from such a cause. There are some open boats, like those of the Lackawanna Company, built for navigating on the Hudson in all weathers, which have never experienced any such accident; but they run comparatively light, and have coamings around the open space a foot high. It is not pretended that the Belle was a boat of this character. It is clear that her owner and captain knew her to be not safe in the hawser tier; and this was made known to those in charge of Schuyler's line from the first. In disregarding this notice and putting the boat in the hawser tier, the tug must be held not to have acted with that reasonable prudence required by the rule above stated, and must be held responsible for what afterwards happened. She was not bound to take the Belle at all. If she did take her, she was bound to put her in a place of reasonable safety and out of danger, in reference to her special condition. The tug manifestly acted with full notice, and putting the Belle in the hawser tier was at the tug's own risk.

Some evidence was given that the heavier boats must be put in front. From the testimony on that subject, I infer that a tow can be handled probably with more ease and celerity by that method of arranging the boats than by any other; but I am by no means satisfied that that is the only practicable arrangement of a few heavy boats when there are many other lighter ones, such as made up this tow. It was shown that formerly, in such cases, the practice was to place the few heavy boats in a line, one after the other; and in this case no sufficient reasons appear why the Belle, an open boat, could not, without any serious inconvenience even, have been placed astern of one of the other deep boats, and, in her place, a covered boat of 140 tons have been put in front.

In behalf of the claimants it is urged, however, that the captain of the Belle, after all, preferred to go in the front tier rather than be taken back to the dock; and that the Belle is at least jointly chargeable with the loss, on the principles laid down in the cases of *The William Murtagh*, 17 FED. REP. 259; *The William Cox*, 9 FED. REP. 672; and I should so hold if I could find the facts to be as claimed. Navigation voluntarily entered upon under circumstances involving carelessness and needless danger or hazard, within the knowledge of those taking part in it, is a tortious act; and when the captains of both the tow and the tug concur in starting upon such a trip, both violate the duties which they owe to the respective owners of the tug and of the tow and her cargo. Both should, therefore, be held chargeable with any loss incurred by such wrongful acts. As the lives and property of third persons, also, are nearly always more or loss involved in these cases, public policy requires, in order to avoid such hazards, that the liability of both should be maintained and enforced. No mere notice, by either, that such a dangerous trip would be at the other's risk, nor even any agreement to that effect, should, therefore, be regarded. Responsibility for the sacrifice of the lives and property of third persons cannot be shifted by any barganing between those who, by their own concurrent acts, cause the loss. But it is obvious that this principle cannot be justly applied except where such hazards are knowingly entered upon by the voluntary and concurrent acts of both tug and tow.

In the case of *The Bordentown*, 16 FED. REP. 270, it was held, in this court, that a simple objection or protest by the captain of the tow against being put in the hawser tier was not sufficient to relieve him of joint liability, it appearing that his objection was not on the ground that his boat was unfit for that place, and that he did not object to go along with the tow in that position. Objections by boatmen to the places assigned them in tows are of daily and constant occurrence; and they are made, for the most part, from mere reasons of individual convenience or preference. Such objections are manifestly of no weight; and, as testified to in this case, if they were list-

ened to, the tow would never get started. But in this case the objections were obviously of a very different character from those in the case of *The Bordentown*. They were made specifically on the ground that the Belle, by her deep loading and open deck, was not fit for the front tier, and could not safely go there. I think the weight of the testimony is clearly to the effect that the captain demanded to be put back into the dock rather than go in front. This is no after-thought on the part of the libelant; it is specifically set up in the libel. The testimony of the captain and mate of the tug is such as to strengthen the testimony of the libelant's witnesses in this respect; for they state explicitly that they should have paid no attention to such a demand if made. Their view of their rights in this respect, even as a matter of custom among towing lines, is not sustained by the superintendents of two other lines whom they called to prove the general usage in this business. Both these experts testified that they should consider such a notice and demand as were given in this case to be binding upon them. That such was the legal obligation there cannot be a particle of doubt. Whatever may be the rights of those who make up a tow, in the disposition of the different boats, it is their duty to make it up for the benefit and safety of each, as well as of all; and their rights are plainly subject to the one supreme condition that not one boat of the whole tow shall be subjected to any unreasonable hazard, or to any danger which she is not reasonably fit to encounter. Every boat taken is entitled to the same reasonable prudence and care for her safety as though she were the only boat in the tow. A boat which, by reason of her deep loading and open decks, could not be prudently placed in the front tier, might, nevertheless, be entirely safe in the inside, under the protection of other boats. There was no impropriety, therefore, in the application in behalf of the Belle to be taken in tow, but not in the hawser tier. The claimants, as I have already said, were not bound to take her at all; but if they did receive her in the tow, they were bound, not only under the notice given them, but by the obvious character of the boat, not to put her in the front tier on such a trip.

I cannot find, in this case, that there was any ultimate, voluntary concurrence on the part of the captain of the Belle in going on in the front tier. The Belle was put in position by the representative of the claimants; the tug's hawser was fastened by them to the Belle's bows; and they made fast also the spring-lines on one side, in despite of her captain's protest; and she was refused to be taken back, as I think the weight of evidence shows, after these lines had been thus fastened by those making up the tow. The fact that her captain afterwards fastened the spring-lines upon the other side, I cannot regard as sufficient evidence of any voluntary concurrence on his part. After she was already partly fastened in the tow in the place assigned, despite his earnest protest, his duty was to do whatever remained to be done

for her safety. Among these duties was fastening the spring-lines upon the other side of his boat.

The libelants are entitled to decrees, with costs, and to an order of reference to compute the damages.