## THE QUICKSTEP.

1. Where the District and the Circuit Court concur in their view of facts in a collision case in admiralty, the case will come before this court with every presumption in favor of the correctness of the decision appealed from.
2. The fact that in a libel for collision a contract of towage is recited in the libel, does not necessarily convert the libel into a proceeding on the contract. Where the real grievance alleged is a wrong suffered by the libellant in the destruction of his boat, by the carelessness and mismanagement of the boat libelled, the reference to the contract is to be regarded as made by way of inducement to the real grievance.
3. An objection of a too general allegation of injury should be made in the court below. It cannot be made here for the first time and after the case has been heard below.
4. In admiralty, an omission to state some facts which prove to be material but which cannot have occasioned any surprise to the opposite party, will not be allowed to work injury to the libellant, on appeal, if the court can see that there was no design on his part in omitting to state them.
5. It is the duty of a vessel which undertakes to tow other boats, to see that the tow is properly made up and that the lines are strong and securely fastened.
6. A party who does not appeal, can be heard only in support of the decree.

APPEAL from the Circuit Court for the Southern District of New York in a matter of collision; the case, as assumed by this court upon the evidence, was this:

One Byrne, the captain and owner of the canal-boat Citizen, laden with wheat, contracted with the captain of the

tug Quickstep to tow the canal-boat from New York to New Brunswick. Byrne did not know how many boats the cap-

tain of the tug would take. The tow, however, when completed, consisted of six boats, —two abreast, on each side of the tug, and one directly in the rear of each of the two boats, as shown in the upper part of the drawing. The Citizen was on the port side, and nearest the tug, and the Wide World was in the same position on the starboard side. The stern of the boats, abreast of the tug, were about even with the stern of the tug, but their bows extended further than the bow of the tug, and the bows of the Citizen and Wide World were coupled by what is called a "bridle line;" the line having been furnished by the towing tug.

This fleet proceeded on their voyage with safety until they approached a point in the harbor of New York, known as Robbins' Reef light-house, when the boat in the rear of the boats on the port

side of the tug became detached. The weather, which was fair when the boat set off from New York, was now somewhat rough, with a certain amount of wind. The tug stopped as soon as the boat broke loose, and then proceeded to back. In backing the bridle-line parted, and the tug got into the trough of the sea, and collided with the Citizen, knocking two holes in her starboard side near the stern, and producing so considerable an injury that she ultimately sunk; her crew, however, not perhaps having exerted themselves as perseveringly as they might have done, to save her. The matter is exhibited in the lower part of the diagram.

In the course of the difficulty two other of the boats got loose. One of them cast anchor and was saved at the spot. The other, loaded with iron, drifted about all night and was picked up uninjured on the next morning.

The owner of the Citizen libelled the Quickstep in the District Court of New York.

*The libel* alleged "a contract" with the steam-tug to tow the canal-boat to New Brunswick for a stipulated price, deviation to another dock before setting off, unreasonable delay in the performance of the contract. It alleged further, that the canal-boat was staunch, &c., and under the complete control of the steam-tug; that when near the light-house on Robbins' Reef, the boat which had been hitched to "the boat of the libellant by some means became detached, that thereupon the steam-tug attempted to pick her up, and to that end commenced to back in so negligent and careless a manner as to endanger the safety of the boat of your libellant; that the libellant protested and warned the master or those in charge of said steam-tug that by so doing they would sink his boat, but the said parties paid no heed to his protest or warning, but continued to back said steam-tug, and handled and managed the same in such a careless and unseamanlike manner that the same said steam-tug struck against the canal-boat with great force and violence, breaking in her starboard side, and causing her to fill with water and sink; that the libellant did all in his power to prevent the said loss; that the same was without fault on his part, and occurred entirely

through the carelessness and mismanagement of the master and mariners on board of the steam-tug." In conclusion, the libel prayed damages.

The answer substantially denied these allegations and set up the plea of inevitable accident. The evidence upon the trial was quite conflicting, but the case, as above given, was the case which this court considered as established by it.

The District Court, giving no opinion and finding no facts whatever, held that the libellant and claimant were both in fault, and divided the damages. On appeal, the Circuit Court gave an opinion of a few words, in which, however, no facts were found—and affirmed the decree. **The owners of the steam-tug appealed.**

*Mr. Donohue, for the appellant:*

The circumstance that the decrees in both courts below were against us, will perhaps be relied on as a reason why the decree here should be against us also. But the object of an admiralty appeal is to bring up the facts in the cause, and to have a rehearing on them; and while the court may, from time to time, speak of not reviewing the facts, it is submitted that both on principle they are bound to do it, and in precedents have done it.* Only where the evidence is balanced will they refuse to reverse.

But here the case comes to this court free from all question of a prior disposition of any fact. It is open for judgment upon the evidence; for we know not on what grounds either court below adjudged the case, whether on fact or on law.

The libel is too general in its terms. Alleging negligence and misconduct generally, it wholly omits to state what particular acts of the tug produced the catastrophe. We cannot reply to such allegations. Moreover, it sets up a *contract* made to tow direct, and a deviation; that we took too many boats; that in backing to pick up another boat we injured this boat and sunk her. But the case shows that proof as to

---

* Schooner Catharine, ad. Dickinson, 17 Howard, 170; Sturgis *v.* **The R. L. Mabey, 21 Id. 451.**

the contract to go direct failed. No such contract is in the least established.

The accident is readily accounted for by a *vis major*. It occurred in a storm. The line parted, without our fault, and the only mode left for us was to back. On our side, although not called on to do anything but to wait until the opposite side have made out a case, we yet fully proved an entire want of negligence. Having started with fair weather, and with reason to suppose we could tow through, we met with a severe storm, which broke this line, and the vessel being deeply loaded, and not protected, sunk.

But whatever view is to be taken of the case, the decree must be reversed. A decree which finds no fact or facts, but a simple legal conclusion, cannot be examined.

*Mr. Carter, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

The difficulty of discovering the truth in collision cases, which are mainly trials of fact, grows out of the character of the evidence, which is always more or less conflicting. The court that can see the witnesses, hear their statements, observe their demeanor, and compare their degree of intelligence, is better able than an appellate tribunal to reconcile differences in testimony, or, if that be not possible, to ascertain the real nature of the transaction. The District Court that tries the case in the first instance enjoys this advantage, and the finding of facts by it, if followed by the concurrent judgment of the Circuit Court, is entitled to so much weight in this court, that it will be presumed a correct conclusion was reached, and before the decision will be disturbed it must manifestly appear that it was wrong. The testimony in this case was heard by the district judge, who decided that the damages should be divided, and the Circuit Court, on appeal, affirmed his judgment, and the case, therefore, comes before us with every presumption strongly in favor of the correctness of the decision of the lower courts.

It is unnecessary to travel through the evidence, to a great

extent contradictory, in order to vindicate our views concerning it. It would serve no useful purpose to do so, and we shall content ourselves with applying the law to a state of facts which we consider the evidence establishes, without any attempt to discuss it. The libel was not filed to recover damages for the breach of a contract, as is contended, but to obtain compensation for the commission of a tort. It is true it asserts a contract of towage, but this is done by way of inducement to the real grievance complained of, which is the wrong suffered by the libellant in the destruction of his boat by the carelessness and mismanagement of the captain of the Quickstep. It is objected that the libel is too general in its terms, and is defective because it does not state the particular acts of negligence and misconduct on the part of the tug which produced the injury; but if this were necessary, the objection should have been interposed at an earlier stage of the proceedings, and cannot be taken, for the first time, after the cause has reached this court. It is always better to describe the particular circumstances attending the transaction; but in admiralty an omission to state some facts which prove to be material, but which cannot have occasioned any surprise to the opposite party, will not be allowed to work any injury to the libellant, if the court can see there was no design on his part in omitting to state them.*

We now pass to the facts of the case.

The inquiry is, who is to blame for what has happened? Clearly not the Citizen, for it does not appear that her conduct in any way contributed to the accident. If the tug, in constructing the tow, used the lines furnished by the different boats, yet as each boat was independent of the other, no responsibility can attach to either for the breaking of the line, which she did not provide, and had nothing to do with making fast. In this case neither the bridle-line nor the line that first parted were supplied by the Citizen, and she ought not to suffer for their insufficiency. It is well settled that canal-boats and barges in tow are considered as being

---

* The Clement, 2 Curtis, 368.

under the control of the tug, and the latter is liable for this collision, unless she can show it was not occasioned by her fault.*

It was the duty of the tug, as the captains of the canal-boats had no voice in making up the tow, to see that it was properly constructed, and that the lines were sufficient and securely fastened. This was an equal duty, whether she furnished the lines to the boats, or the boats to her. In the nature of the employment, her officers could tell better than the men on the boats what sort of a line was required to secure the boats together, and to keep them in their positions. If she failed in this duty she was guilty of a maritime fault. The parting of the line connecting the boat in the rear on the port side with the fleet, was the commencement of the difficulty that led to this accident. In the effort to recover this boat the consequences followed which produced the collision. If it was good seamanship on the part of the captain of the tug to back in such an emergency, he was required, before undertaking it, at least to know that his bridle-line would hold. And if the sea was in the condition the captain of the tug says it was, it was bad management to back at all. Whether this be so or not, he was bound, in executing a manœuvre to recover the detached boat, to look to it that no other boat in the fleet suffered in consequence of it.

But the claimants of the tug deny that their vessel was in fault, and insist that the disaster occurred by the violence of the storm and gale of wind which prevailed at the time. If this be so, how did it happen that two of the canal-boats that got loose from the fleet survived the perils of that night? One of these boats anchored, and was saved without difficulty; the other, loaded with iron, drifted about and was picked up the next morning without having sustained any damage. The fact that these boats did not experience any bad effects from the severity of this storm explodes the theory advanced by the claimants on the subject.

---

* The Express, 1 Blatchford, 365; Steamboat New York v. Rea, 18 Howard, 223.

In our opinion the tug was clearly in fault, and the courts below, in dividing the damages, doubtless came to the conclusion that the men on board the Citizen were also to blame for deserting their boat sooner than good seamanship under the circumstances required. As the libellant did not appeal, and can, therefore, only be heard in support of the decree, we are not required to consider whether the evidence convicts the canal-boat of fault.* The appellants have no right to complain, for in any aspect of the case they cannot escape without paying at least half the loss.

JUDGMENT AFFIRMED.

