## THE FLORENCE.

(District Court, N. D. New York.    July 6, 1898.)

1. TOWAGE—INJURY TO TOW—LIABILITY OF TUG.
    A tug is liable for injuries happening to a boat in its tow through any
    want of proper knowledge by the master of the difficulty of navigation
    in the waters which are the theater of the tug's operations, or from so
    making up the tow that it cannot safely pass between a known obstruction
    and the shore.

2. SAME—EVIDENCE—UNKNOWN OBSTRUCTIONS.
    Positive evidence of persons on different boats in a tug's tow that one
    of the boats therein struck upon the bottom, and that they heard a
    grating noise, is not to be overcome, as evidence of negligent towage, by
    mere negative evidence, such as that other tugs with similar tows passed
    the same place without striking; and such evidence is not to be accepted
    as proof that the boat struck an unknown obstruction, so as to relieve the
    tug from liability.

Libel by Franklin Allen, master of the canal boat J. W. Whitney,
against the steam tug Florence, to recover damages for negligent
towing of the canal boat on the 31st day of August, 1897, at a point
on the Hudson river about opposite the arsenal wharf at Watervliet,
N. Y.

The libel alleges that the Florence agreed to tow the Whitney, having a
cargo of corn, from Troy to Albany for an agreed price.    The Whitney was
placed by the tug in the forward tier of the tow, there being two tiers and
three canal boats abreast in each tier, the Whitney occupying the port side.
The Florence had entire charge of the fleet and did the steering.    This was

customary and proper. After proceeding about a mile and a half down the middle of the river the tug passed over to the easterly side, and attempted to tow the fleet between a dredge anchored in the river and the easterly shore and negligently ran the Whitney aground, causing the injuries complained of. The faults imputed to the tug are that she was negligent in arranging the boats three abreast in view of the position of the dredge, in attempting to pass the dredge with the boats so arranged and in towing the Whitney into the shallow water on the east side of the river. The answer denies all negligence on the part of the tug, and alleges that when the Whitney reached West Troy on the previous day she was in a damaged and leaky condition and that whatever damages were suffered by her were occasioned by reason of her own negligence in not being in a seaworthy condition.

Ingram & Mitchell and John W. Ingram, for libelant.
Harris & Rudd and Worthington Frothingham, for respondents.

COXE, District Judge (after stating the facts). On the 31st day of August, 1897, the libelant's canal boat Whitney, while being towed by the respondents' tug Florence down the Hudson river from Troy to Albany, sprung a leak of so serious a nature that it became necessary to beach her on Beverwyck island, at the northerly limits of the city of Albany. The theory of the libelant is that the damage thus produced was due to the negligence of the tug in not properly making up the tow and in going too near the shoals on the easterly side of the river. The theory of the defense is that if a collision occurred at all it was with a hidden obstruction unknown to experienced rivermen. No negligence is imputed to the canal boat. The duty imposed upon the master of a tug in such circumstances is to use the caution and skill which belongs to prudent navigators. He is required to exercise ordinary diligence and see to it that the tow is properly made up and that the lines are strong and securely fastened. He must know the condition of the river, the width of the channel and the tow and the effect of the tide. He must determine whether canal boats when lashed together can pass safely between the edge of the channel and any obstructions which may be in the river. He is the pilot of the voyage and responsible for the navigation of both vessels. If accident results from the want of proper knowledge on his part of the difficulties of navigation in the waters which are the theater of his tug's operations, the owners of the tug are liable. The Margaret, 94 U. S. 494; The Niagara, 20 Fed. 152; The M. J. Cummings, 18 Fed. 178, and cases cited. Although the master of the tug is bound to know of snags, sand bars, sunken barges and other dangers of navigation, he is not responsible for a loss occasioned by striking an unknown rock. The Angelina Corning, 1 Ben. 112, Fed. Cas. No. 384; The Mary N. Hogan, 30 Fed. 927; The Robert H. Burnett, Id. 214; The Pierrepont, 42 Fed. 687.

The evidence is overwhelming that the Whitney was in a seaworthy condition at the time she was taken in tow by the Florence. The respondents offered some evidence of admissions by the Whitney's master that, on her journey from Buffalo, she struck upon sharp rocks at a point where blasting was going on and received injuries which caused her to leak. This is denied by the master and every member of the crew testified that nothing of the kind occurred. Admissions

are most unsatisfactory proof of facts and should not be accepted against positive proof to the contrary. Assuming, then, that when taken in tow the Whitney was in the ordinary condition of canal boats of her class, the inference is plain that something must have occurred on the way down the river to cause the sudden and dangerous leaking. She was then wholly in charge of the tug. There is some evidence that there were eight boats in the tow. Assuming, however, that there were but six, three in each tier, the tow was some 54 feet broad by 200 feet long with no propelling force or steering power of its own. The "stone crusher" was anchored about the middle of the channel and the evidence is clear, both from the testimony of witnesses and the chart introduced by the respondents, that the channel was deeper upon the west side than upon the east side of the crusher. There is no dispute that the tow proceeded down the river upon the east side of the crusher, and several witnesses upon the Whitney and upon other boats of the tow testify positively that she struck bottom when about opposite the crusher. Several heard a grating noise and one witness testifies that he saw the bow of the Whitney rise when she came in contact with the bottom. It also appears that after the Whitney was placed on the dry dock a long scar, apparently made by a hard, sharp instrument and extending from the bow backward for 60 feet, was discovered. This might have been made by a rock or by the anchor of the crusher. To meet this testimony the respondents offered a large amount of testimony of a negative character. It is said, that if the tow had come in contact with any obstruction it would immediately have been telegraphed to the engine and would have retarded or stopped the tug. And, again, it is proved by a number of river pilots that they proceeded up and down the river in safety upon the day in question and upon the previous day with tows similarly made up. Of course this latter evidence is of little value, unless the draught of the tows, the condition of the tide and the position of the crusher are shown to be similar to the conditions at the time of the accident. The presumption is that something occurred while the tow was in charge of the Florence to cause the leak. The testimony of the libelant's witnesses is positive and conclusive that this was occasioned by the negligent towing of the Florence. Such testimony cannot be overthrown by mere inference drawn from negative testimony of the character mentioned. Upon the whole case the court is satisfied that the injury in question was occasioned by lack of prudence upon the part of the Florence.

The theory that the Whitney may have struck an unknown rock or other obstruction in the channel cannot be maintained. It is based wholly on conjecture. There is absolutely no proof of such an obstruction. It would require unusually strong evidence to convince the court that such an obstruction could exist in a channel only about 250 feet in width and traversed daily by a multitude of boats. There should be a decree for the libelant with a reference to compute the amount due.