## THE EDMUND L. LEVY.

(Circuit Court of Appeals, Second Circuit. March 4, 1904.)

### No. 116.

1. TOWAGE—LIABILITY OF TUG FOR INJURY TO TOW.

The agreement of a boat to be towed at her own risk does not exempt the tug from liability for damages occasioned by her own negligence, or the failure of the master, who is responsible for the navigation of both vessels, to exercise ordinary care and skill to see that the tow is properly made up, and that the hawsers are of proper length, strong, and securely fastened, because such liability does not arise out of the towage contract, but is imposed by law. On the other hand, the master of a boat, who offers her as a tow, represents her as sufficiently staunch and strong to withstand the ordinary perils to be encountered on the voyage, and the tug is not liable for damages resulting from the weakness, decay,

¶ 1. See Towage, vol. 45, Cent. Dig. §§ 15, 19, 28, 29.

or leaks of the tow, or other defects which render her unseaworthy, and which are not known or obvious to the master of the tug.

2. SAME—NEGLIGENCE OF TUG—EVIDENCE CONSIDERED.

Evidence considered, and *held* not to sustain the claim of a libelant that the sinking of a canal boat, while being towed by a tug through floating ice, was due to the negligence of the tug in using a hawser from 125 to 150 feet long, but to show by a preponderance that under the circumstances such length was a proper one, and that the tow was properly made up and carefully navigated.

Appeal from the District Court of the United States for the Eastern District of New York.

This is an appeal by the claimant, Thomas Quigley, from a final decree, entered February 14, 1903, in favor of the libelant, John O'Connor, for $1,834.55 on account of damages sustained by his canal boat, E. Remington & Sons, because of alleged negligence of the tug Levy while towing the canal-boat through the ice in the upper Hudson river in December, 1900. The facts are accurately stated in the decision of the court below.

J. Parker Kirlin and Amos Van Etten, for appellant.

Nelson Zabriskie, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. There is no dispute that the condition of the river as to ice, for some distance below Albany, was known to the master of the Remington before the voyage commenced. By the terms of the contract the canal-boat was to take the risk of ice and weather, the tug agreeing to tow her only so far as the existing conditions would permit. But, as is aptly stated by the District Judge:

"Because the canal-boat assumed the risk of ice, she did not thereby authorize towing in the same manner as if the ice were absent."

We do not deem it important to discuss with greater particularity the terms of the contract for the reason that it did not change the reciprocal obligations which the law devolved upon the parties.

The tug was neither a common carrier nor an insurer of the boat or her cargo. She was not required to exercise the highest degree of skill, but reasonable diligence and care only. She was bound to know the channel and whether she could complete the voyage with safety, so far as safety depended upon known facts, or facts easily capable of ascertainment. The agreement of the canal-boat to be towed at her own risk did not exempt the tug from liability for damages occasioned by her own negligence. That liability does not arise out of the towage contract, but is imposed by law. The master of the tug was the pilot of the voyage and responsible for the navigation of both vessels. It was his duty to exercise ordinary diligence to see that the tow was properly made up, that the hawsers were of the proper length, strong and securely fastened. On the other hand, the master of a boat offering her for towage represents her as sufficiently staunch and strong to withstand the ordinary perils to be encountered on the voyage. If she be unseaworthy by reason of weakness, decay or leaks and such defects are not obvious to the master of the tug he will be absolved from responsibility where such unseaworthiness causes the damage complained

of. The tug undertakes only for that degree of skill, care and prudence necessary for the management of a seaworthy boat. The Margaret, 94 U. S. 494, 24 L. Ed. 146; The Quickstep, 9 Wall. 670, 19 L. Ed. 767; The Lady Pike, 21 Wall. 1, 22 L. Ed. 499; The William Murtaugh (D. C.) 3 Fed. 404; The Syracuse, 6 Blatchf. 2, Fed. Cas. No. 13,717; The Florence (D. C.) 88 Fed. 302.

Various faults were alleged in the libel, but it is unnecessary to consider any except the charge that the tug was negligent in towing with too long a hawser. On this ground alone she was inculpated by the District Judge. He says:

"After much consideration and some doubt, it seems to the court that it was not prudent to carry the tow on so long a hawser, breaking a channel proportioned to the width of the tug, and probably little more than the width of the canal-boat, so that sheering on the hawser would bring the canal-boat with considerable violence against the ice on either side. It is perfectly apparent that a hawser 150 feet long would permit unnecessary sheering or swinging, and that the tow would be to a greater extent ungovernable. Whatever doubt exists from the conflicting statements of the parties, the balance would seem to turn in favor of the libelant, by the evidence of Mr. Briggs, who was a man of obvious character and understanding, and familiar with the river and navigation through ice therein."

We find ourselves unable to concur in this conclusion for the following reasons:

First.—In our judgment the preponderance of evidence tends to establish the proposition that a hawser from 125 to 150 feet in length was a proper one to use. The tow was arranged in tandem fashion shortly after leaving Coxsackie. The master of the canal-boat, who had 40 years' experience on the river and had been frequently towed through floating ice, made no complaint of the length of the line at this time. He does not say that the length was unusual or improper. There is testimony that at one time he called to the tug to shorten the line, but this was after the final bump was given, near New Baltimore, to which the sinking of the boat is attributed. At the trial he testified that in his judgment a 70-foot hawser would have been long enough. The only other witness for the libelant was John N. Briggs, the consignee of the cargo, who evidently impressed the court as a most intelligent and disinterested witness. He is engaged in the ice and coal business at Coeymans and was certainly not qualified to express an expert opinion upon the question in controversy. He testified that the hawser should not have been more than 30 or 40 feet at the most. Opposed to this extremely meager and unsatisfactory testimony is the opinion of several experienced river pilots, two of whom have spent over 30 years in navigating the Hudson, that not only was the hawser of the usual and proper length, but that it would have been impossible to handle the tow in the ice with a shorter line. Not alone in the number of the witnesses, but also in their experience, does the testimony of the claimant far outweigh that of the libelant.

Second.—The District Judge had the great advantage of seeing and hearing the witnesses and, in ordinary circumstances, his finding upon a disputed question of fact would not be disturbed on appeal, but the rule is not applicable to the present controversy for the reason that it is presented in this court upon a somewhat different state of facts.

The District Judge was in doubt, and it is evident that the testimony of Mr. Briggs finally induced him to resolve that doubt in favor of the libelant. Indeed, he says so explicitly. Twice in the opinion Mr. Briggs is referred to; once as "a very reliable witness" and, again, as "a man of obvious character and understanding." It is probable that this reliance upon the testimony of Mr. Briggs was due in a great measure to the fact that he testified that he had no interest in the controversy. On the reference to compute the amount of damages he presented claims aggregating $167 and was allowed by the commissioner $204, which included a partial loss on the cargo of $164. In an evenly balanced case these facts, if known to the trial judge, might have turned the scales the other way. Without imputing any intentional wrong to Mr. Briggs we are unable, upon the record now presented, to regard him as "a very reliable witness."

Third.—The use of a long hawser is supported by reasoning which seems to be based on experience not only but upon common sense. Assuming that the use of a hawser 30 or 40 feet in length would have a tendency to lessen the swinging of the tow, a point which is by no means clear on the proof, it seems reasonably certain that this would only be substituting one danger for another. With a short line the boat would get all the force of the quick water from the wheel, thus making her less steady and harder to tow. It would also subject her to the danger of having ice thrown with all the force of the back-wash against her bow. In addition to this the danger of collision would be serious. It frequently happens, indeed it happened upon the morning in question, that upon entering a field of ice the progress of the tug is impeded and almost stopped. In such circumstances the tow, being only 40 feet behind, would inevitably overtake the tug and crash into her stern. The master of the tug in arranging his tow should place the boats in the positions which experience has shown to be the safest, taking into consideration all the dangers to be apprehended. We think this was done in the present instance. A hawser 125 to 150 feet in length seems to combine the two essentials of avoiding the back-wash and at the same time enabling the tug to keep command of the tow.

Fourth.—It appears from the libelant's testimony that the first severe blow, the one which caused the disaster, was received not on the side but "right on the bow" of the canal-boat. Such a blow could hardly be attributed to the yawing of the boat. It might have happened with a short hawser, or two hawsers, or with the boat lashed to the side of the tug. The assertion that it was the result of using a hawser 150 feet in length seems hardly warranted by the proof. Again, the channel was a crooked one and it was impossible to avoid some sheering as the tow swung around the turns. The boat was down at the head and had a starboard list; she had no rudder. Had she been properly loaded it is not unlikely that her tendency to sheer would have been overcome, to some extent, at least.

Fifth.—The burden was upon the libelant to establish negligence by a preponderance of testimony and we think he has failed to do so. It is unnecessary to consider the other accusations against the tug. The trial judge unquestionably selected the strongest ground upon which

to sustain a finding of negligence and, by implication, at least, he found with the claimant upon the other allegations of fault. The tow was properly made up in tandem fashion and with the Remington, which was the heaviest loaded boat, ahead. The libelant admits this and the testimony shows that it would have been practically impossible to have towed the boats abreast or in any other way than the one adopted. It would have been an idle proceeding to have sent the tender, the tug Caswell, ahead to break a channel. The Levy was perfectly competent to do this, and did do it. The Caswell's place was with the tow rendering such assistance as was in her power. During the greater part of the time, after leaving Coxsackie, she was made fast to the port side of the Remington. The allegation that the speed of the tug was excessive is unsupported by the proof. On the contrary it appears that it took her about five hours to make the distance of eight miles between Coxsackie and New Baltimore. She towed with care and at times barely made steerage way.

The decree of the District Court is reversed, with costs, and the cause is remanded with instructions to dismiss the libel, with costs.