### THE LYNDHURST.

(District Court, S. D. New York. May 4, 1904.)

1. TOWAGE—FASTENING OF TOWLINE—DUTY OF TUG.

It is the duty of a tug taking in tow a canal boat which has but one man on board to see that the towline is sufficient and securely fastened, and it cannot escape liability for damages arising from the insufficient securing of the line on the tow by delegating such duty to the master of the boat.

2. SAME—LIABILITY OF TUG FOR COLLISION OF TOW WITH VESSEL AT WHARF.

A tug *held* liable for injury to her tow from collision with a moored vessel caused by the towing line slipping off the cleat on the tow and permitting her to be carried against the other vessel, on the ground that the line was either not properly fastened or became loose from the effect of a prior collision due to the negligent navigation of the tug.

In Admiralty. Suit against tug for injury to tow from collision.

James J. Macklin, for libellant.
Carpenter, Park & Symmers, for claimant.

ADAMS, District Judge. This action was brought by the libellant John D. Myers, the owner of the canal boat Phillip Rafferty, to recover from the tug Lyndhurst, the damages suffered by him on the 13th of March, 1897, through injury to the Rafferty, caused by a collision in the North River, with a carfloat moored to the wharf at 12th Street. The boat had been lying stern out, light, outside of two other boats fastened on the upper side of 13th Street and was taken in tow there, about 7 o'clock in the morning, by the tug, to be towed to Edgewater, New Jersey, for a load of coal, on a hawser, furnished by the tug and leading from her stern. The loop of the hawser was put by the master of the boat over her stern cleat, under directions from the tug, but it shortly afterwards slipped off, letting the boat go adrift and come in contact with the float, causing the damage complained of. The tide was ebb and the wind of some force from the north-west.

The tug's liability turns principally upon the question whether she was negligent in making the boat fast. The libellant contends that the hawser was frozen and stiff and it slipped off for that reason. Also that the tug was in fault in several other particulars, among them, that the tug failed to see that the tow was properly fast and permitted her to come in violent collision with a lighter. The claimant contends that the accident was wholly produced by the negligence of the master of the boat in that he did not properly fasten the hawser to his cleat.

The weight of the testimony seems to show that the hawser was not frozen. The weather had been cold but not freezing, although by

the Weather Records the thermometer got down to 30 degrees about 8 o'clock. Prior to that hour it had ranged from 45 degrees at 1 o'clock A. M. to 31 at 7 o'clock A. M., and for the several prior days, the mean temperature was not under 45. I do not see, in view of the evidence, how the theory that the hawser was frozen can be sustained. Nevertheless, the tug apparently did not perform her duty. It was said in The Quickstep, 9 Wall. 665, 671, 19 L. Ed. 767:

"It was the duty of the tug, as the captains of the canal-boats had no voice in making up the tow, to see that it was properly constructed, and that the lines were sufficient and securely fastened. This was an equal duty, whether she furnished the lines to the boats, or the boats to her. In the nature of the employment, her officers could tell better than the men on the boats what sort of a line was required to secure the boats together, and to keep them in their positions. If she failed in this duty she was guilty of a maritime fault."

The claimant insists here that the tug had a right to assume that the master of the boat had securely fastened the hawser and relies upon the case of Pederson v. John D. Spreckles & Brothers Company, 87 Fed. 938, 31 C. C. A. 308, to sustain his contention. That was an action of negligence brought by Pederson, who was the mate of a schooner, for injuries caused to him by the breaking of a chock upon her, which he had selected to run the towing line through. The schooner was in charge of her own officers and crew. It was held that the bitts upon which the line was placed, and which required the use of the broken chock, were the wrong ones, and the libellant could not recover. The general principle which governs these actions was recognized and the case in hand distinguished from ones of that character. It was said (page 943, 87 Fed., page 313, 31 C. C. A.):

"This testimony, instead of showing that the tug was towing at an excessive speed, tends to show that the line, after passing through the breast chock, was fastened to the wrong bitt, and that the negligence was upon the part of the officers and crew of the schooner, instead of upon the part of the tug. It is shown by the testimony that the tug was fully adequate to the work. It was managed with reasonable care, judgment, and skill. It performed its duty in an ordinary, careful, and prudent manner, and did its entire duty, unless, as is claimed by appellant, it was its duty to see that the line was properly placed and fastened on the schooner before it started to tow. A vast number of authorities are cited by the appellant to the effect that the tug dominates, guides, and directs; that the tow keeps in her wake, and conforms to her directions; that the tug must furnish the motive power, and direct the location of the tow; how she shall be lashed; with what fastening she shall be secured; to see that her tow is properly made up, and secured with lines of proper strength. Many of these cases are in relation to the duties of the tug in the towing of canal boats and barges, which have no life, voice, or control in making up the tow; and in all these cases it is held that it is the duty of the tug to see that the lines of the tow are properly, sufficiently, and securely fastened, and that if the tug fails in this duty, she is guilty of a maritime fault. But such cases have no application to a case like this, where the schooner had its own officers and crew on board, and, in pursuance of the custom in this respect, took full charge, management, and control of these matters. The distinction between the cases is too manifest to require extended discussion, and is clearly illustrated in the decision of the court in The Quickstep, 9 Wall. 665, 670 [19 L. Ed. 767], which is one of the leading cases relied upon by the appellant. In the course of the opinion the court said:
'If the tug, in constructing the tow, used the lines furnished by the different boats, yet, as each boat was independent of the other, no responsibility can attach to either for the breaking of the line which she did not provide, and had nothing to do with making fast.'

The testimony shows, without conflict, that it is the custom, in all cases where the tow has its own officers and crew on board and in charge, for the officers of the vessel to arrange all the preliminary matters, such as placing and making fast the towline; that such matters were within the duty of the appellant to perform; and that he did in fact perform that duty."

One man only formed the crew of this boat and it was evidently the duty of the tug to see that the hawser was properly made fast. She was not relieved from her obligation by the turning of the duty over to the master of the barge, who, it would seem, became the agent of the tug in handling the hawser. The fact that the loop held in the beginning of the towing, and only slipped off after the tug had permitted the boat's starboard side to come, with some violence, in contact with a lighter, lying near the foot of Little 12th Street, the next street below, tends to show that the hawser was sufficiently made fast in the beginning and came off in consequence of this collision. When it came free, so that it had no further towing power, the boat was about 50 feet clear of the wharf and had been towed with the hawser probably about 150 feet. One of the claimant's witnesses, a boatman, testified that the loop was put over the cleat "all right." I conclude that the accident was either due to the tug's omitting to see that the loop of the hawser was carefully put over the cleat—The Sweepstakes, 23 Fed. Cas. 541—or to its being shaken loose by collision with the lighter, which was due to negligent towing.

Decree for the libellant, with an order of reference.