## THE JOSEPH PEENE.

(District Court, S. D. New York. May 24, 1904.)

1. TOWAGE IN HUDSON RIVER—FLOATING ICE—NEGLIGENCE OF TUG.

A tug started from Jersey City up the Hudson to Yonkers, in the night, with libelant's canal boat and another tow belonging to the owner of the tug. Encountering floating ice, the master of the canal boat requested to be left, but the tug proceeded with her to Yonkers, where she was cast loose, and permitted to drift up the river with the flood tide for half a mile, while the other tow was being taken care of. She was then brought back against the tide, and through the ice. They stopped at a wharf on the way, and the master again requested to be left there, but the tug proceeded to the wharf where she was to be delivered, where it was found that her planks were cut through by the ice, so that she soon filled. *Held*, that the tug failed to exercise the degree of reasonable diligence and care imposed on her by the circumstances, and especially after having continued the voyage against the master's protest, and was liable for the injury.

In Admiralty. Suit against tug for injury of tow.

Alexander & Ash, for libellants.
Carpenter, Park & Symmers, for claimant.

ADAMS, District Judge. This action was brought by Christian Heidt, et al., owners of the canal boat A. C. McLaughlin, to recover the damages sustained by reason of injuries received by that boat, while in charge of the tug Joseph Peene, on the 10th day of January, 1903. The boat was destined for the wharf of the Federal Sugar Refining Company at Yonkers and it is claimed that she was injured through the negligence of the tug, in the following, among other particulars:

"1. * * * * * * * * * * * * * * *

2. In that said tug towed said boat 'A. C. McLaughlin' at night time through the ice, and refused to suspend said towing, when requested until daylight, and until said boat could be towed without danger of injury by contact with the ice.

3. In towing said boat through the ice, after warned and requested by her master not to do so.

4. In abandoning said boat and letting her go adrift in the ice, on the occasions hereinbefore mentioned.

* * * * * * * * *

6. In abandoning said boat in the ice after getting her to the dock of the Sugar Refining Company as before mentioned, and failing to render assistance by promptly pumping her out and otherwise, as she was in duty bound, to prevent additional injury to boat and cargo."

The answer denies any negligence and alleges that the tug exercised:

"Great care and prudence in said towage service, and that the leak and resulting damage to said boat was in no wise caused through any fault or want of care on the part of the said steam tug 'Joseph Peene' or those in charge of her."

The canal boat was loaded with empty barrels, destined for the sugar refinery at said wharf, and was taken in tow at the foot of Morgan Street, Jersey City, at about 1 o'clock A. M., together with another boat, belonging to the tug owner, bound for Yonkers, which

was considerably larger than the McLaughlin. The McLaughlin was at first taken on the tug's starboard side, but on the trip up, in the vicinity of Manhattanville, when ice was encountered, the master of the boat asked that she be left at Edgewater. Instead of complying with this request, the pilot of the tug dropped the boat astern, and, the tide being flood, the vicinity of Yonkers was reached without perceptible, if any, injury to her. There, however, the libellants' boat was left to drift up the river for about half an hour, while the other boat was delivered, and by the time the tug was ready to take hold of the McLaughlin again, she was about half a mile above her destination, which necessitated towing in the ice, against the tide, mostly exposing her starboard side. For this service, the tug took the boat behind on two short lines. On the way to her destination, the tug stopped with the boat at Peene's Wharf to rearrange the towing lines and the master of the boat then requested that she be left there but the tug master concluded to go on with her. When they arrived in the vicinity of the Federal Wharf, the tug dropped the boat, while she broke up the ice, by doing which the tug succeeded in getting the boat up to the wharf, where she could lie diagonally and be made fast. There had been only about 5 inches of water in the boat before the last towing was attempted; over two feet were found between 5 and 6 o'clock; about an hour afterwards between 4 and 5 feet; then she filled. It was subsequently found that planks, 2 inches in thickness, principally on the starboard side, were cut through by the ice, at the water line; others were gouged out but not cut through.

The general relations of a tug and tow have been recently defined by the Circuit Court of Appeals for this circuit, as follows (128 Fed. 684, 685):

"The tug was neither a common carrier nor an insurer of the boat or her cargo. She was not required to exercise the highest degree of skill, but reasonable diligence and care only. She was bound to know the channel and whethe, she could complete the voyage with safety, so far as safety depended upon known facts, or facts easily capable of ascertainment. The agreement of the canal-boat to be towed at her own risk did not exempt the tug from liability for damages occasioned by her own negligence. That liability does not arise out of the towage contract, but is imposed by law. The master of the tug was the pilot of the voyage and responsible for the navigation of both vessels. It was his duty to exercise ordinary diligence to see that the tow was properly made up, that the hawsers were of the proper length, strong and securely fastened. On the other hand, the master of a boat offering her for towage represents her as sufficiently staunch and strong to withstand the ordinary perils to be encountered on the voyage. If she be unseaworthy by reason of weakness, decay or leaks and such defects are not obvious to the master of the tug he will be absolved from responsibility where such unseaworthiness causes the damage complained of. The tug undertakes only for that degree of skill, care and prudence necessary for the management of a seaworthy boat. The Margaret, 94 U. S. 494, 24 L. Ed. 146; The Quickstep, 9 Wall. 670, 19 L. Ed. 767; The Lady Pike, 21 Wall. 1, 22 L. Ed. 499; The William Murtaugh (D. C.) 3 Fed. 404; The Syracuse, 6 Blatchf. 2, Fed. Cas. No. 13,717; The Florence (D. C.) 88 Fed. 302." The Edmund L. Levy, 128 Fed. 683.

My attention has not been called to any ice case in point. The Packer (C. C.) 28 Fed. 156, has been cited by the claimant. There the tug was held not liable because, although the tow was injured, the

tug was doing the best it could under the circumstances and the tow concurred in the risk.

Here, the towage was conducted at an unusual hour and the master of the tow, after encountering the ice, protested against being taken further on account of it. It is doubtful if any serious injury was received by the boat from being taken through the ice up as far as Yonkers. It probably occurred while she was being towed back through the ice. It is in such respect that negligence on the tug's part is apparent. Having undertaken against the master's protest to continue the voyage, thereafter it became incumbent upon the tug to take every reasonable precaution to secure the safety of the tow. She should, for example, have proceeded at once to the Federal Wharf, instead of leaving the boat to drift, while the barge belonging to the tug owner was taken care of, and there was subsequent negligence in not leaving the boat at Peene's Wharf. The tug failed to exercise the degree of reasonable diligence and care, which the circumstances required of her. The evidence fully sustains the 2nd, 3rd, 4th and 6th charges of fault.

Decree for the libellants, with an order of reference.