## THE NONPAREIL.

## THE HUDSON.

(District Court, S. D. New York. May 26, 1925.)

Collision ⊂⊃115.

One of several tugs moving steamship under direction of those in charge of steamship *held* not at fault in failing to inspect line taken from steamship, which broke, causing another tug to collide with moored barge.

Libel in rem by the Berwind-White Coal Mining Company against the steam tug Nonpareil, claimed by Edward M. Timmins, who filed petition under fifty-sixth rule against the steam tug Hudson. Libels dismissed.

Decree affirmed in 15 F.(2d) 202.

Macklin, Brown & Van Wyck, of New York City (W. J. Mahar, of New York City, of counsel), for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City (A. Howard Neely, of New York City, of counsel), for the Nonpareil.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for the Hudson.

THACHER, District Judge. As owner of the barge Eureka No. 33, the Berwind-White Coal Mining Company filed its libel in rem against the steam tug Nonpareil, the Nonpareil being claimed by Edward M. Timmins, who has filed a petition under the fifty-sixth rule against the steamship Veenbergen and the steam tug Hudson. Process has been served upon the Hudson, but service has not been perfected upon the Veenbergen.

The libelant seeks to recover damages to the Eureka No. 33 while lying at Pier 33, Brooklyn, incurred in collision with the Nonpareil while the latter was engaged with three other steam tugs in towing the steamship Veenbergen southeasterly through the Buttermilk Channel. The Veenbergen was berthed at Pier 32, immediately north of the Hamilton Ferry, with her bow inshore. The four steam tugs, Keller, Hudson, Brooks, and Nonpareil, were engaged in moving her from this berth to some destination south of Pier 33. The steamer was first taken into the stream, her stern being turned north, then straightened out, and from that point the flotilla proceeded south through Buttermilk Channel. The position and arrangement of the four tugs at that time was as follows: The Hudson had taken a hawser from the bow of the steamship and was in the lead. The Nonpareil was made fast by lines broadside to the ship at her port quarter. The

Brooks was in a similar position on her starboard quarter. The Keller, which had taken a line from her stern as she left her berth, in order to swing her stern to the north as she cleared the pier, continued on this line in order to assist in keeping her course when the bend at Red Hook was reached.

When the vessels had proceeded in this order, and the Hudson had been steadily pulling on the hawser for several minutes, this hawser broke at the chock on the steamer. The immediate result was a loss of control, and the ship began to sag in toward Pier 33, where the Eureka No. 33 was moored near the end of the pier at the entrance to Atlantic Basin outside of another vessel. Upon the breaking of the hawser, the Hudson immediately pulled the hawser aboard and proceeded, under direction from the steamer's bridge, to hold the steamer's port bow away from the pier. Under similar orders the Nonpareil first put her helm hard aport, which had a tendency to head the vessel away from the pier, and then under similar orders put her helm hard astarboard in an effort to swing her stern clear of the Eureka. Notwithstanding these measures the Nonpareil was brought into collision with the Eureka.

The libelant has not suggested any fault chargeable to the Hudson or the Nonpareil after the breaking of the hawser, and rests its case solely upon a claim of fault in connection with the use of the hawser or the strain put upon it. Under these circumstances, it appearing that the Nonpareil had no connection whatsoever with the hawser in question, either in furnishing it or in using it, the Nonpareil is necessarily entirely absolved from any fault or liability in connection with this accident. As far as the Hudson is concerned, it is claimed by the libelant that she may be charged with fault in connection with the breaking of the hawser, upon the theory that she was under a duty of inspection to see that the hawser furnished by the ship was in all respects suitable for the use to which it was put, and in this connection reliance is placed upon the decision in The Quickstep, 9 Wall. 665, 19 L. Ed. 767.

In that case the facts appeared to be quite different from those in the case at bar. Although the Veenbergen was not under steam at the time her navigation and handling by the four tugs who were serving her was directed from her bridge. Whatever the Hudson did, she did under specific directions given by Capt. Diecken, who was aboard the vessel, although employed as master of the tug Nonpareil. When the vessel was brought into the stream, the Hudson was directed to take the hawser, which was let down to her from the deck of the steamship and was made fast to her stern bitts. She was then ordered to proceed until she had taken out 25 or 30 fathoms, under reduced speed. When the slack was taken up in this way, she was then directed to hook up and proceed at full speed, which she did. Everything went well until she had thus been proceeding for about five minutes. There was no sudden strain or jerk in this operation, which might have caused the hawser to break. After about five minutes the break occurred at the chock on board the steam vessel. There is no evidence to show whether the break was due to a defect in the rope, and, if so, whether the defect was obvious or latent, or whether it was due to a defect in the chock.

It is the claim of the libelant that, in the absence of evidence to show precisely how the break occurred, fault must be assumed on the part of the tug Hudson. This contention necessarily rests upon the assertion that the tug was under a duty to see that the hawser furnished by the ship was fit and proper for the use to which it was put. In the case of The Quickstep, supra, it was held that a tug engaged in making up a tow of canal boats, in the making up of which the captains of the canal boats had no voice, was under a duty to see that the lines, whether furnished by the boats or by the tug, were sufficient and securely fastened, and in this connection, referring to such flotilla, it was said: "In the nature of the employment, her officers could tell better than the men on the boats what sort of a line was required to secure the boats together and to keep them in their positions." In this case the situation was precisely reversed. Those in charge of the steamer had assumed the duty and responsibility of directing the tugs as to the manner of their operation in every detail. Under these circumstances it would be quite unreasonable to require each tug, as it was directed to take this or that line from the steamer, to demand inspection of the lines or be responsible for any insufficiency which was not apparent to anyone except those on board of the steamer.

Whatever conclusions may be reached upon different states of fact, the guiding and controlling principle requiring the exercise of ordinary and reasonable care under the particular circumstances of each case must control. The hawser in question, so far as could be ascertained by any of those on board the Hudson through any reasonable inquiry, was in all respects sufficient for the use to which it was put. I do not think that each tug was required to inspect all of the ship's lines before undertaking the towage

service, nor do I think any tug was required, in the course of that service, to demand inspection of any line it was directed to take from the ship. The Hudson was therefore without fault in using the hawser, which, so far as it could ascertain, was in all respects fit for the use to which it was put.

The libel against the Nonpareil must be dismissed, and the libel and petition against the steamtug Hudson must also be dismissed. I have not considered or given any effect to the question as to whether or not the libelant has adduced any evidence of actual damage. If, upon the merits, it had appeared that the libel should be sustained against either the Hudson or the Nonpareil, I should have allowed the libelant further opportunity to adduce additional proofs on this question.

Decrees in accordance with this opinion will be submitted.