## SOUTHERN PAC. CO. v. MOORE SHIPBUILDING CO.

## SAME v. HAGLUND et al.

Circuit Court of Appeals, Ninth Circuit.
May 23, 1927.

Nos. 4925, 4926.

**1. Admiralty ⬌118—Decision in admiralty depending on conflicting evidence, unless clearly against the evidence, will not be disturbed on appeal.**

In admiralty, when questions of fact depend on conflicting evidence, the decision will not be reversed, unless it clearly appears that it is against the evidence.

**2. Collision ⬌95(5)—Tug with steamer lying dead across channel, accepting passing signal of ferryboat, held not required to warn of tug coming towards opening from other way.**

Where tug, attached to steamer lying dead in the water crosswise of the channel, accepted signal of steam ferryboat to pass in the opening between the stern of the steamer and the shore, 100 feet away, its only duty was to prevent change of position of the steamer, which would interfere with the maneuver, and it was not under duty to warn the ferryboat of the approach to the opening from the other direction of another tug, in attempting to avoid which the ferryboat collided with the steamer.

**3. Collision ⬌95(5)—Ferryboat, in attempting to pass at full speed through 100-foot opening between shore and steamer dead in water, colliding with her, held negligent.**

Steam ferryboat, which attempted to pass at full speed through 100-foot opening between shore and stern of steamer lying dead in water across channel, and which, on discovering tug approaching the opening from the other direction, in attempting to avoid it, changed its course and collided with the steamer, *held* negligent.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California, in Admiralty; Maurice T. Dooling, Judge.

Two cases, one a libel by the Moore Shipbuilding Company against the Southern Pacific Company, owner of the Thoroughfare, the Rolph Navigation & Coal Company, as claimant of the tugs Relief and Hercules, being made third party respondent; the other a libel by Hildur Haglund, administratrix of Ernest Haglund, deceased, against the Southern Pacific Company and the Rolph Navigation & Coal Company. From decrees against the Southern Pacific Company, it appeals. Cases consolidated for hearing on appeal. Affirmed.

William Denman, of San Francisco, Cal., for appellant.

Ira S. Lillick, of San Francisco, Cal. (Hunt C. Hill, of San Francisco, Cal., of counsel), for appellees Moore Shipbuilding Co. and Haglund.

Sullivan & Sullivan and Theo. J. Roche, of San Francisco, Cal., for appellee Rolph Navigation & Coal Co.

No. 4925:

Before RUDKIN, Circuit Judge, and SAWTELLE and JAMES, District Judges.

No. 4926:

Before HUNT, Circuit Judge, and SAWTELLE and JAMES, District Judges.

SAWTELLE, District Judge. The collision in question took place on the 24th day of February, 1921, at about noon. The steam ferryboat Thoroughfare, running between San Francisco and Oakland, Cal., through Oakland Estuary, and sailing easterly on the southerly side of the channel, saw the steamer Enterprise with the tug Relief attached to her stern lying across the channel, with her stern toward the southerly shore. The Thoroughfare, when about 1,000 feet from the Enterprise, sounded one blast of her whistle, which signal was not answered. A few minutes thereafter the Thoroughfare sounded a second passing signal, which was

accepted with one blast from the Relief. The Thoroughfare then attempted to pass between the stern of the Enterprise and the edge of the navigable channel on the south shore, a space of about 100 feet. After the exchange of signals and continuously thereafter until the collision occurred, the Enterprise was dead in the water.

The tug Union was approaching the opening from the easterly side. She was located to the southerly of the center of the channel. Between the time of the exchange of signals and the collision there was no lookout on the Enterprise. The master of the Relief knew that the Union was approaching the Enterprise from the opposite direction, but the master of the Thoroughfare was without such knowledge. The Thoroughfare, when about half way through the opening between the Enterprise and the edge of the channel, swung to port, and collided with the stern of the Enterprise, thereby damaging the latter vessel and killing Ernest Haglund, one of her workmen.

The Moore Shipbuilding Company libeled the Southern Pacific Company, the owner of the Thoroughfare for the damages to the Enterprise. The administratrix of the estate of Ernest Haglund, deceased, libeled both the Southern Pacific Company and the Rolph Navigation & Coal Company for the damages arising from Haglund's death. The former case was tried first, with the result that the appellant, Southern Pacific Company, was adjudged solely in fault, and a decree entered against it for $5,000. The Haglund Case was submitted on the evidence taken in the Moore Case, and the court awarded $13,000 as damages against the Southern Pacific Company.

By stipulation the cases were consolidated for hearing before this court. The appellant contends that both cases should be reversed, on the ground that the collision and the ensuing damages was not caused by its fault, but solely by the fault of the Moore Company and the tug company.

Although there are 15 assignments of error relied upon in the Moore Case, and 14 in the Haglund Case, they have been condensed by proctor for the appellant as follows:

"(1) The absence of a lookout on the Relief and the Enterprise was gross negligence; if he had been present, the accident would not have occurred.

"(2) The signal from the Relief for the approaching Thoroughfare to pass the stern of the Enterprise was a violation of the Relief's duty to protect the Enterprise and the men on her and the Thoroughfare from the collision which was inevitable after the

Thoroughfare was told that it was safe to pass, and attempted to pass, with the unseen Union coming towards the opening.

"(3) That it was gross neglect for the Relief not to have blown four whistles—a danger signal—as she saw the Thoroughfare approaching the opening.

"(4) That it was gross neglect for the Relief to have stopped pulling the Enterprise to the northerly and out of the way of the Thoroughfare as she made her inevitable turn to avoid the Union.

"(5) That the Relief violated the pilot whistle rule in not pulling the Enterprise to the northerly when she blew one whistle to the Thoroughfare.

[1] It is conceded that, "in cases on appeal in admiralty, when the questions of fact are dependent upon conflicting evidence, the decision of the District Judge, who had the opportunity of seeing the witnesses, and judging of their appearance, manner, and credibility, will not be reversed, unless it clearly appears that the decision is against the evidence." Wilder's Steamship Co. v. Low (C. C. A.) 112 F. 161, 165; The Alijandro (C. C. A.) 56 F. 624; The Quickstep, 9 Wall. 665, 19 L. Ed. 767; The Carib Prince, 170 U. S. 655, 18 S. Ct. 753, 42 L. Ed. 1181. But appellant insists that "none of the errors relied on here raise any question as to any of the facts found in Judge Dooling's opinion. They have to do with the conclusions of law which he drew from these facts, and with other facts not found by him, because the conclusions of law (erroneous, we believe) from those actually found made it necessary. Hence we are not faced with any presumptions in favor of the decrees arising from presenting the evidence (in part) in open court."

We are unable to agree to this proposition. The trial court, who heard substantially all of the testimony, made his findings and conclusions, and we find nothing in the record which would seem to militate against the presumption arising from the rule above quoted, which has repeatedly been followed by this court.

[2] We have carefully reviewed the testimony and considered each of the assignments of error, and we hold that the findings and conclusions as set forth in the opinion of the learned trial judge were amply supported by the evidence and law, and we therefore adopt the same as the opinion of this court:

"The essential facts are as follows:

"(1) When the Thoroughfare's whistle blew for the second time one short blast, and the tug Relief answered it, the Relief had taken the sternway off the Enterprise and

was holding her practically dead in the water, and there was room for the Thoroughfare to pass between the stern of the Enterprise and the edge of the navigable channel. This situation was apparent to the master of the Thoroughfare, and his signal under all the existing conditions signified his intention to direct his course to starboard, and no obligatation was placed upon or assumed by the Relief to do anything other than to prevent such a change of position on the part of the Enterprise as would interfere with the maneuver selected by the Thoroughfare; that is to say, to pass between the stern of the Enterprise and the edge of the channel.

"(2) From the time that the Thoroughfare's second single blast was blown, and was answered by the Relief, there was no change in the position of the Enterprise. For at least 1,000 feet thereafter the Thoroughfare advanced practically at right angles to the Enterprise, heading for the 100-foot opening between the stern of the Enterprise and the edge of the channel, and so advanced at full speed without knowing what she might encounter on the other side of the Enterprise after passing through the narrow opening. During all of this time the Enterprise was at rest, and so remained until struck by the Thoroughfare.

"(3) The collision was caused by the Thoroughfare turning to port before she had cleared the Enterprise, in order to avoid meeting the oncoming Union. I find no authority for holding the Relief responsible for not advising the Thoroughfare of the presence of the Union, or for accepting the Thoroughfare's maneuver knowing that the Union was coming down the channel. It is a fact, however, that when the Relief blew its one blast in reply to the signal of the Thoroughfare the master of the Relief was aware of the presence of the Union, and the master of the Thoroughfare was not.

"My conclusion therefore is that libelant is entitled to a decree against the Thoroughfare, and that the third party respondent is entitled to be dismissed, and a decree will be entered accordingly. The cause will be referred to the commissioner to ascertain and report the amount of the damage sustained by the Enterprise."

[3] We might add, however, that we construe Judge Dooling's opinion as holding that the Thoroughfare was guilty of negligence:

First. In failing to stop or reduce her speed when her first signal was unanswered.

Second. In attempting to pass through the 100-foot opening at full speed.

Third. In attempting to pass through such opening without making the slightest effort to ascertain whether she might encounter another vessel after passing the Enterprise.

Fourth. In directing her course to port before she had fully cleared the Enterprise.

In any event, we so hold, and, further, that such negligence was the proximate cause of the collision, and that the Thoroughfare was solely responsible for the damages which resulted therefrom. Negligence is the basis of the action in each of the two cases, and on this issue the trial court held the appellant liable, and we think rightly so.

RUDKIN, Circuit Judge, concurs in Southern Pacific Company v. Moore Shipbuilding Co., No. 4925, having taken no part in Southern Pacific Company v. Haglund, No. 4926.

HUNT, Circuit Judge, concurs in Southern Pacific Company v. Haglund, No. 4926, having taken no part in Southern Pacific Company v. Moore Shipbuilding Company, No. 4925.