**MORAN TOWING & TRANSPORTA-
TION CO., INC., Plaintiff,**

v.

**BOUCHARD TRANSPORTATION CO.,
INC., Defendant.**

**No. 70 Civ. 2546.**

United States District Court,
S. D. New York.

March 4, 1974.

**2**

Burlingham, Underwood & Lord, New York City, for plaintiff; Robert B. Pohl, New York City, of counsel.

Darby, Healey, Stonebridge & Whelan, New York City, for defendant; Thomas H. Healey, New York City, of counsel.

## OPINION

BONSAL, District Judge.

This suit in admiralty was tried before the Court without a jury on November 20, 1973. The plaintiff seeks indemnity from defendant by reason of moneys paid by plaintiff in settlement of a personal injury claim to one of its employees. At the conclusion of the trial, the Court found for the plaintiff and dismissed the defendant's cross claim for damages, reserving on the issue of plaintiff's attorneys' fees and expenses.

Plaintiff, Moran Towing & Transportation Co., Inc. ("Moran"), a New York corporation with offices in New York City, owned and operated the tug GRACE MORAN, a vessel of 281 gross tons, 101 feet long, which was built in 1967 and propelled by a 3,163 horsepower diesel engine. On July 12–13, 1969, George Ackerman was employed by Moran as alternate captain of the GRACE MORAN, which was towing defendant's barge B–65, loaded with approximately 65,000 barrels of gasoline, from Bayway, New Jersey to Baltimore, Maryland, pursuant to an oral contract between plaintiff and defendant. Barge B–65 had no power and was under the command of Arnie Olsen, who rode aboard the GRACE MORAN. At about noon on July 13, 1969, when the Tug and tow were about half a mile northeast of Buoy "10", Brandywine Channel, preparations were made to change from a hawser tow to a push gear tow for the trip up the Delaware River. This procedure required the slowing down of the Tug and pulling in the hawser aboard the Tug. At this point, the watch changed and Captain Ackerman was relieved by the Mate, McCormick, who took charge of the operation while Captain Ackerman went below. The hawser became fouled in the Tug's propeller, immobilizing the Tug. Since the crew was unable to free the propeller, the Coast Guard was called.

Captain Ackerman, who had returned to the deck of the Tug, was concerned that the Tug and tow might drift into the neighboring shipping lanes, and decided that as the Barge was heavily laden, its anchor should be used to anchor both vessels. Accordingly, a line was carried by launch to the Barge, and the two units were pulled together so that the Tug and the Barge were secured on their starboard sides. Captain Ackerman and Captain Olsen boarded the Barge and, after some difficulty in freeing the anchor, the anchor was dropped and its cable began to pay out. After some 400 feet of cable had paid out, Captain Ackerman ordered Captain Olsen to stop the windlass drum, but Captain Olsen was unable to do so. It appeared that the windlass could be braked either by hydraulic power or by a foot brake at the bottom of the windlass wheel. However, the hydraulic system was not in operation; the tubes between the hydraulic motor and the windlass were in disarray and could not be operated. However, there were hoses on the deck of the Barge which could be used instead, but it would have taken some time to rig the hoses between the hydraulic motor and the windlass. Therefore, Captain Olsen sought to brake the windlass with a foot brake at the bottom of the wheel. The foot brake consisted of a foot pedal on the deck with a wooden lined brake shoe which would act as a friction brake to stop the rotation of the windlass drum. When Captain Olsen began to use the foot brake, Captain Ackerman observed

smoke and sparks appearing to come from the windlass due to the friction from the applying of the foot brake. After directing the deckhand to rig up a fire hose to water down the area of the friction, Captain Ackerman went over to the foot brake and put his foot on the pedal, with that of Olsen, in an attempt to stop the windlass. When he did so, the wheel disintegrated and a piece of it flew off and injured Captain Ackerman's foot. Thereafter, the Coast Guard arrived and removed Captain Ackerman by helicopter to a neighboring hospital.

When the Tug's propeller was freed, the Tug and tow proceeded to Baltimore where, on the following day, the windlass was surveyed by Mr. Barone, a licensed marine surveyor. Mr. Barone testified that when he attempted to reassemble the wheel, he could only find five of the six spokes, and, upon checking the soldered connections where the spokes fitted into the hub of the wheel, he observed that five of the solders were clean, indicating a recent break, while the sixth was covered with rust, indicating that the spoke had been missing for some time. Barone testified that he questioned Barge Captain Olsen about this and that Olsen confirmed that the spoke was missing.

As a result of the accident, Captain Ackerman was hospitalized and lost earnings from the time of the accident to January, 1970, when he returned to work. Plaintiff paid him $1,184 in maintenance and cure, and settled his claim for personal injury for an additional $18,000. Plaintiff sustained other expenses totalling $695.99,* making a total of $19,879.99, for which amount plaintiff seeks indemnity from defend-

ant. The reasonableness of the settlement with Captain Ackerman is not seriously contested, but defendant denies any liability to indemnify plaintiff by reason of the accident.

■■ In entering into the oral contract of towage, defendant impliedly warranted to plaintiff that the Barge and her appurtenances, including the windlass, were seaworthy. South, Inc. v. Moran Towing and Transportation Co., 360 F.2d 1002, 1005 (2d Cir. 1966); The Edmund L. Levy, 128 F. 683 (2d Cir. 1904); George W. Rogers Construction Corp. v. Tug Ocean King, 252 F. Supp. 657 (S.D.N.Y.1965). While there was evidence adduced at trial that the windlass had operated properly on two occasions prior to the accident, these occasions involved different waters and different circumstances. Plaintiff proved a prima facie case at the trial that one of the spokes was missing and that the brake shoe lining was worn. Plaintiff also established that the hydraulic system was not connected. No evidence was offered by the defendant to the contrary, and accordingly, the Court found that the windlass was unseaworthy at the time of the accident and that this was a breach of defendant's implied warranty to the plaintiff.

■ Defendant argues that even if the windlass was unseaworthy, Captain Ackerman was negligent in failing to hook up the hoses to the hydraulic motor so the foot brake would not have to be relied upon, or was negligent in stepping on the brake pedal when he did. However, in view of the location of the Tow near travelled sea lanes and the dangerous nature of the cargo on the Barge, the Court finds that Captain Ackerman was not negligent in taking the actions he

---

* These included:
  (a) Fee for engaging Baltimore counsel to conduct investigation at Baltimore.     $311.84
  (b) Fee of United States P & I agency to interview Captain Ackerman in New Jersey, hospital.     129.15
  (c) Fee of Peter Barone in conducting survey of the wheel and

brake assembly at Baltimore on July 14, 1969.     100.00
  (d) Fee of Wm. F. Watkins for a damage survey called by Bouchard of the windlass at New York.     155.00
  _____
  $695.99

did. Hooking up the hoses was a time-consuming process, and speed was essential. And even though his putting his foot on the pedal along with Captain Olsen's was a factor in the windlass's disintegration, it was a reasonable action for him to take under the circumstances.

 Defendant also argues that the unseaworthiness of the windlass was not the proximate cause of the injury to Captain Ackerman. It is true that the Tug's crew were careless in permitting the tow hawser to be fouled in the Tug's propeller and had it not been for this, there might have been no need to use the Barge's anchor during the voyage. However, even though the propeller was fouled, if the windlass had been seaworthy and working properly, it would not have disintegrated and Captain Ackerman would not have been injured. And it is not reasonably foreseeable that Captain Ackerman—acting in the exercise of such reasonable care and maritime skill as prudent navigators usually employ—would be injured by an unseaworthy windlass while attempting to correct the effects of a fouled propeller. Therefore, the proximate cause of his injuries was the windlass's defective condition and not the prior carelessness of the Tug's crew. Frederick Snare Corp. v. Moran Towing and Transportation Co., 195 F.Supp. 639 (S.D.N.Y.1961); Neptune Transportation Corp. v. The Bartow, 158 F.Supp. 45 (S.D.N.Y.1956). Houma Well Service, Inc. v. The Tug Capt. O'Brien, 312 F.Supp. 257 (E.D. La.1970), cited by defendant, is not applicable to the present case since there the tug captain knew or should have known prior to the accident that the tow was unstable and yet he failed to take prompt action.

For the foregoing reasons, the Court finds that the unseaworthiness of the windlass was the proximate cause of Captain Ackerman's injuries and that, therefore, the plaintiff is entitled to indemnity from the defendant for the moneys plaintiff spent in settlement of Captain Ackerman's claim against it, including the attorneys' fees and expenses listed above.

The foregoing constitutes the Court's findings of fact and conclusions of law Rule 52(a), Fed.R.Civ.P.

Settle Judgment on notice.