### THE WM. M. HOAG.

(District Court, D. Oregon. May 12, 1900.)

No. 4,474.

1. COLLISION—MOVING AND MOORED VESSEL.
    A moving vessel must be held liable for the damages caused by collision with one moored, unless she overcomes the presumption of fault arising from the fact of such collision; and she cannot be exonerated although it appears that the negligence on her part was slight, and that the collision was more the result of accident than such fault.

2. SAME—STEAMER OVERLAPPING DOCK.
    Where, by the prevailing custom, and as a matter of necessity, a steamer moored overlaps her own dock, she cannot be charged with fault on that account contributing to a collision.

3. SAME—DAMAGES RECOVERABLE—DEMURRAGE.
    Demurrage is not recoverable in a suit for collision where the vessel, when injured, was at her dock, undergoing repairs, and her place had been taken by another, belonging to the same owners, and it does not appear that their business was in fact interrupted.

In Admiralty. This was a suit against the steamer Wm. M. Hoag to recover damages for collision.

C. A. Dolph, for libelant.
J. K. Weatherford, for defendant.

BELLINGER, District Judge. This is an action for damages to the steamer Lurline, resulting from a collision with the steamer Hoag while the former was lying at her dock at the foot of Taylor street, in this city. The accident occurred on the 8th of June of last year, upon the arrival of the Hoag from the upper Willamette river, a little after 5 o'clock in the afternoon. The Hoag's landing place is just below that of the Lurline, and it is claimed on behalf of the former that the Lurline extended past her own dock some distance along the space at which the Hoag was accustomed to land. In mak-

ing her own landing, the pilot on the Hoag undertook to pull his bell to give the signal for backing, and the bell pull broke in his hand. The captain of the Hoag testifies that after the break he caught the wire which was attached to the bell's stem, and gave a pull, but the latter was jammed in some way so that he could not pull it, and it slipped through his hand. Charles Kamm testifies to a conversation with the captain of the Hoag after the accident. In his testimony he says that Capt. Zumwalt, after the Hoag landed, came over to where Kamm was, and wished him to go on board the Hoag, and look at his broken bell pull in explanation of the manner in which the accident occurred. Kamm says: "Well, I went right over with him, and took a look at it. I saw the pull, that was broken about four inches below the handle. This pull is about seven inches in length, and I think it is about $\frac{3}{4}$x$\frac{5}{8}$ in thickness and width. There was about three inches remaining still attached to the bell wire, which was standing from the face of the wheel. * * * As I went in there, why I reached over—I asked the captain—I says: 'What is the matter? Wouldn't your bell work?' And he says, 'The pull broke.' And I reached over, and grabbed the pull, like this, and pulled up twice. Then I pulled the third time, and rang three bells with it. 'Well,' I says, 'didn't you try it?' He says: 'My God, no. I never thought of it.'" Capt. Zumwalt, of the Hoag, was interrogated concerning this admission, and the question was asked him whether he said, "My God, I never thought of that." To this question Capt. Zumwalt answered, "I never did such a thing in my life, as I know of, anyway." The impression left upon my mind by this testimony, and by the manner of the witnesses on the stand, is that Capt. Zumwalt, in the excitement of the moment, did not think of attempting to pull the bell by the remaining stem and wire attached, and that the accident was due to this failure on his part. The singular qualification which he makes in his answer, "I never did such a thing in my life, as I know of, anyway," is suggestive of a hesitancy on his part to contradict the positive statement of Kamm, and it is not denied that when Kamm went on board the Hoag he was able to and did ring the Hoag's gong in the manner described by him. I am not disposed to attribute very great negligence to Capt. Zumwalt under the circumstances, situated as he was. In the excitement of the moment he did, probably, what many other men would have done in his situation. Nevertheless, in so far as there was negligence, the negligence was his. The rule is that, if the fact of a collision between a moored vessel and one moving be shown, the burden of proof is upon the one moving to show that it was free from fault, and it must repel the presumption of its negligence, or suffer the damages incurred. In its general features the case somewhat resembles those cases where neither party is in fault, and where, according to an ancient rule, sometimes formerly applied in some of the courts of this country, damages were divided between the two colliding vessels. Nevertheless, the case is not one where the cause of the collision is inscrutable. It is clear enough that this collision resulted from the failure of Capt. Zumwalt to ring his gong,

as I am satisfied he might have done if it had occurred to him that there was enough of the broken stem of his pull remaining—as there in fact was—to have enabled him to do so. I am of the opinion that the Lurline was not a trespasser upon the dock of the steamer Hoag. By the prevailing custom, and as a matter of necessity in these cases, steamers overlap their own docks.

The damages claimed by the Lurline amount to $1,058.78. This includes $325 demurrage. But demurrage cannot be allowed. The steamer Undine had taken the place of the Lurline upon the latter's route prior to the accident, and while the Lurline was undergoing repairs. The only effect of the accident, so far as the question of demurrage is concerned, was to continue the Undine where she was until the repairs upon the Lurline were completed; it being the intention, upon the return of the Lurline to her route, to place the Undine upon the dock for repairs. So that there was no interruption of the business of the Vancouver Transportation Company, and no appreciable loss from this cause, so far as appears. Joseph Paquet, by profession a boat builder, testifies that he could have repaired the Lurline for $450, but that in doing so he would not have taken her out upon the ways, the expense of which in this case amounted to $350. Without this item, the estimate of cost placed upon the repairs by Paquet is somewhat higher than the cost actually incurred in making the repairs by the Vancouver Transportation Company. Jacob Kamm testifies that the bill paid the Oregon Railway & Navigation Company in this behalf was a pretty stiff price, and I am doubtful as to whether the Hoag should be charged with this item, or at least with the whole of it. I have concluded to adopt Paquet's estimate, rather than award the amount actually paid by the transportation company, and I therefore find for the libelant in the sum of $450 and costs.