## COELLO v. UNITED STATES.

(District Court, E. D., Louisiana. December 8, 1925.)

No. 16877.

1. **Collision ⬯71(2)—Moving steamship, colliding with ship moored to wharf in narrow slip, held entirely at fault.**

Persons in charge of moving steamship, colliding with steamship moored to wharf in narrow slip, *held* at fault in attempting to make slip with knowledge of impending squall and other conditions.

2. **Collision ⬯22—Collision between moving steamship and ship moored at wharf in narrow slip held not inevitable accident.**

Collision between moving steamship and steamship moored to wharf in narrow slip *held* not such as could not have been prevented by exercise of timely, ordinary, due care and caution, though due proximately to wind squall.

3. **Collision ⬯22—When defense of inevitable accident sustainable stated.**

Defense of inevitable accident is sustainable, where moving vessel collides with one at wharf or anchor, only by evidence sufficient to overcome presumption of former's fault.

4. **Collision ⬯71(3)—Collision of moving vessel with moored ship projecting beyond end of slip held not due to latter's position.**

Collision between moving steamship and ship moored at wharf with stern projecting beyond end of slip *held* not due to position of moored ship, which was seen and known, or should have been, by those in charge of moving ship before approaching slip, in view of prevailing custom.

In Admiralty. Libel by David Coello, master and bailee of the steamship San Bernardo, against the United States. Decree for libelant.

Denegre, Leovy & Chaffe and Jas. Hy. Bruns, all of New Orleans, La., and Pillans & Gresham, of Mobile, Ala., for libelant.

Edouard F. Henriques, Sp. Asst. U. S. Atty., of New Orleans, La.

BURNS, District Judge. Libelant, as master and bailee for the owners of the Mexican steamship San Bernardo, claims damages of the United States, as owner of the steamship Lafcomo, which collided with the former as it lay moored to a wharf in a slip belonging to the Alabama Dry Dock Company at Pinto Island, in the harbor of Mobile, Ala., on January 10, 1922, at or about 2 o'clock p. m.

The slip runs east and west from Mobile river which runs north and south. Owing to the crowded condition of the Dry Dock Company's slip, the stern of the San Bernardo extended out from the wharf in the slip on its north side some 30 or more feet into the river, which is some 800 feet wide at that point. The fairway in the middle of the river about that point is about 300 feet wide, with a dredged cross-channel leading into the Dock Company's slip, which is 150 feet wide. There was, therefore, about 100 feet of opening in the slip.

The Lafcomo had been one of a laid-up fleet anchored at some distance up the river. She was 400 feet long by 50-foot beam, and light. For docking purposes she was taken in tow by two tugs and brought down the river under their power, the flotilla, however, being operated from her own bridge, and as she attempted to enter the slip the collision occurred. She was in charge of the United States Shipping Board port captain and a deputy harbor master, acting as pilot. The wharfinger regulates the mooring and anchorage of all vessels in the harbor, under a state harbor commission established by state law.

Claimant's defense is inevitable accident. Its proctor contends that a squall, which blew up suddenly as the Lafcomo was maneuvering for the slip, plus the negligence of the San Bernardo in lying as she was, caused the damage. The evidence is that the weather was bad all through the forenoon preceding the squall. The day was cloudy, with rain. Small craft warning signals had been displayed locally by the United States Weather Bureau from 10 a. m. to 2 p. m., at which time northwest storm warnings were hoisted. [1] The wind and rain squall which blew up had been noticed by those in charge of the Lafcomo as she came down the river. They decided to attempt making the slip. As she was coming about, swinging her head upstream, the squall broke with a wind velocity about which there is much contradiction in the evidence, but which, fairly resolved, would approximate 5 or 6 Buford scale, or say 30 miles, from southwest. The ship fetched up alongside a government tanker moored to a pier or wharf running up and down stream, stem up stream, just off the southerly entrance to the slip. A line from the Lafcomo was heaved to this ship in the hope of making fast to it and thus ride out the squall. The master of the tanker ordered it cast off. Here the wind velocity rose to 7 or 8 Buford or say 35 or 40 miles, forcing the high, light hulk upstream, in shore toward the San Bernardo's stern. The smaller tug was then attempting to pull her head out in the river, but had not sufficient power to pull her high side against the wind. Her anchor was not used, because she had no power to lift it.

The drifting of this vessel was not caused by any sudden happening which nautical experience could not anticipate. The wind that arose was just what they expected from their own observation as well as the official warnings before she began to maneuver, if not before she left the anchorage a little farther up the river, when those responsible for her movement knew, or should have known, that she would depend entirely upon the two particular tugs of known capacity, and could not use her anchors in emergency, either because they were unshipped, or because of cabled bottoms at that point in the river, or because, if dropped, she had no power to hoist them, or because of all three combined. Likewise they knew, or should have known, the difficulties attending the maneuvering of a large, light ship into this particular narrow slip from a narrow river. The threatening character of the weather was sufficient to have warned them of the very risk they negligently assumed. Clearly the fault lay entirely with the moving vessel. The Chancellor (No. 17253 of the Docket) 1925 A. M. C. 1028; The Louisiana, 3 Wall. 164, 18 L. Ed. 85; The Severn (D. C.) 113 F. 578.

[2] Under the conditions that obtained it was impossible, according to the evidence, for the Lafcomo to have got into the slip without touching either the tanker referred to or the San Bernardo. The evidence is very persuasive to the effect that after the tanker had been cleared, the San Bernardo would have received the blow of the Lafcomo's starboard side on her stern, even had this not been projected beyond the wharf end, because the small forward tug was unable to hold her head out against the wind, even with the assistance of the larger tug on her stern quarter in reverse full speed.

[3] The collision, therefore, though due proximately to the force of nature, was not such as could not have been prevented by the exercise of timely, ordinary, due care and caution. The due care displayed thereafter in the matter of properly using the two tugs to the extent of their capacity cannot sustain the defense of inevitable accident, under the circumstances of this case. This defense can only be sustained in a case where a moving vessel collides with one at its wharf or at anchor, by evidence sufficient to overcome the presumption of its fault.

[4] What has been said is also sufficient to dispose of the contention that the collision was due to the position of the moored ship. The position of the ship was seen and known, or should have been, by those in charge of the moving ship at least before their approach to the slip. The evidence is that there was nothing unusual in the projection of ships beyond the ends of slips in the Mobile river; the wharfinger, acting under authority of state law, regulated such matters, and because of local necessities, due to the size of the harbor, the mooring of ships so projecting was a prevailing custom, of which those in charge of the "Lafcomo" were bound to take notice. The William M. Hoag (D. C.) 101 F. 846. For other cases, see 11 Corp. Juris, 1094.

There will be a decree for libelant; costs to follow decree.