## SIMKINS v. R. L. MORRISON & SONS et al.
## R. L. MORRISON & SONS et al. v. SIMKINS.

### No. 8970.

Circuit Court of Appeals, Fifth Circuit.

Nov. 15, 1939.

Henry G. Howard, of Augusta, Ga., for appellant and cross-appellee.

George B. Barrett, of Augusta, Ga., for appellees and cross-appellants.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

This is a suit in admiralty in personam. The libel was filed by R. L. Morrison, Sr., R. L. Morrison, Jr., and H. W. Morrison, a partnership, doing business as R. L. Morrison & Sons, hereafter called libellants, owners of a derrick barge, against Leroy H. Simkins, hereafter called respondent, owner of the tug Sallie, to recover damages for the total loss of the barge and equipment by fire, while being towed by the Sallie. Judgment was rendered in favor of libellants in the sum of $3,300.

Respondent does not challenge the amount awarded but contends libellants failed to sustain the burden of proving negligence on the part of the tug. The evidence in the record tends to show the following facts.

Libellants engaged the Sallie to tow the barge from Port Wentworth, on the Savannah River, to a point up the river near Augusta. The Sallie is a stern wheel paddle boat about 55 feet long, operated by a gasoline motor. Her fuel tank is located on the top of the engine room about 38 feet from the bow. The tow was made up with the barge ahead of the tug, to be pushed up the river, in the customary manner. There was no crew or watchman on the barge. It was necessary to carry additional gasoline to complete the voyage. Two drums of gasoline were

put on the stern of the barge by the master of the tug and two were carried on the bow of the tug. It was usual to siphon the gasoline from the drums through the bung into cans, to be emptied into the fuel tank. When the contents of a drum get too low to siphon, the gasoline is poured through the bung into the can.

The Sallie developed machinery trouble on the voyage and the tow was tied up at Little Hell Landing. Repairs were completed about noon on Saturday. The crew of the Sallie consisted of Ransey, acting as master, and a colored man, Grant, acting as deck hand and watchman. Grant had been employed by respondent for over two years and was considered competent. Respondent gave Ransey permission to go to Augusta for the week end, to return and complete the voyage on Monday. Ransey in turn gave Grant permission to go to a nearby town, telling him to return in time to set out the lights required by law. Both men left and the tow remained unattended until Grant returned to the boat about 9 P. M. Immediately thereafter a fire started on the Sallie. It damaged her bow and was communicated to the barge which burned to the water's edge and sank.

At the time the fire started there was one drum of gasoline on the stern of the barge. Two drums of gasoline were on the bow of the tug. One was standing up. The other had been opened, part of the contents had been removed and it was reclining on its side.

There was no direct evidence as to the cause of the fire. Grant died some time after the accident but before the evidence was taken in the case. Two witnesses, colored men, who accompanied him to the bank of the river in an automobile, testified, in substance, that he went out to the barge in a small boat and soon thereafter they saw lights on the barge. They had some trouble getting their automobile started. While they were doing this they saw the fire start.

The lanterns used on the Sallie were oil burning, the kind generally used on the river. There was evidence tending to show that it is always dangerous to have a lighted lantern in the vicinity of a drum of gasoline.

■ It is elementary that a tug does not have the liability of a common carrier or an insurer but is required to use ordinary care and prudence in performing the services. When an accident occurs to the tow the action is ex delicto and the burden is on the tow to show negligence on the part of the tug. However, circumstances may create a strong presumption of negligence. In that event the burden is on the tug to rebut the prima facie case or, at least, to show a reasonable excuse for the accident other than its own negligence. The Steamer Webb, 14 Wall. 406, 20 L.Ed. 774; The Clarence P. Howland, 2 Cir., 16 F.2d 25.

■ The barge was solely in the care of the crew of the tug. It was negligence on the part of the tug to allow the tow to remain unattended from about noon until nine o'clock at night. During that period an unauthorized person might have boarded the tug, opened the bung of a gasoline drum and left it leaking. Maritime regulations require mooring lights to be set out at sundown. Had Grant not been derelict in his duty he could have attended to setting out the lights while there was still sufficient daylight to permit him to discover whether gasoline was leaking from the drum on the bow of the tug. It is common knowledge that gasoline is very volatile and the fumes may ignite from heat as well as from flame. As an experienced riverman Grant should have known there was danger in having a lighted lantern in proximity to a drum of gasoline that had been opened.

■ From the circumstances shown, in the absence of proof to the contrary, it may be conclusively presumed the fire was caused by gasoline fumes igniting through contact with a lantern on the Sallie. This was the result of want of ordinary care and prudence on the part of Grant, for which respondent was responsible.

The judgment is affirmed.

■ The cross appeal presents nothing for decision. The only substantial error assigned is to the exclusion of a report of a Maritime Board that investigated the accident. This does not present reversible error. The cross appeal is dismissed.

■ It does not appear that the cross appeal or the brief in support thereof materially augmented the costs. Costs of appeal will be assessed against appellant.