## THE LAPWING.

### WILBANKS & PIERCE, Inc., v. HENDRY.

### No. 11289.

Circuit Court of Appeals, Fifth Circuit.

July 10, 1945.

Benjamin W. Yancey and Jos. M. Rault, both of New Orleans, La., for appellant.

Jas. Hy Bruns, of New Orleans, La., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellant, as owner of the quarterboat "Santee," filed a libel in rem against the tug "Lapwing" to recover for injuries sustained by the "Santee" while being towed by the "Lapwing" from Pascagoula. Mississippi, to Fort Meyers, Florida. When engaged in performing the towage contract, the "Lapwing" tied up the quarterboat in Carrabelle Inlet, Florida, for the night. As the tide ebbed during the night, the quarterboat settled on submerged piling, one of which pierced the wooden hull and caused her to sink.

Libelant alleged that the sinking was caused by the negligence, unskillfulness, and inattention to duty of the officers and crew of the "Lapwing" in selecting an improper and unsafe place to moor the quarterboat; and in negligently allowing the quarterboat to settle, with the receding tide, on obstructions which were known or should have been known to the officers and crew of the "Lapwing." The answer denied the negligence charged and affirma--

tively set up that the place of mooring of the tow was the safest and best available place known to the master of the "Lapwing"; that it was the customary and usual place for mooring tows and crafts; and that it was necessary to take the quarterboat into Carrabelle Inlet as she had no anchor by which she could have been anchored outside.

The appeal presents the question: Was the sinking caused by the negligence, unskillfulness, and inattention to duty of the officers and crew of the tug "Lapwing"?

 The Supreme Court in Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699, upon the question of the duty and liability of a tug under a towage contract, held (1) that the tug is not a bailee of the vessel in tow or her cargo; (2) that a suit by the owner of the tow to recover for an injury to the tow caused by negligence on the part of the tug is an action ex delicto; (3) that the tug is not liable as an insurer or as a common carrier, but owes to the tow the duty to exercise such reasonable care and maritime skill as prudent navigators employ for the performance of similar services; and (4) that the mere fact that the tow was in good condition when received by the tug, and in damaged condition when delivered, does not raise any presumption of fault on the part of those performing the towage service.

In New Orleans Coal & Bisso Towboat Co. v. United States, 5 Cir., 86 F.2d 53, 60, this court stated the law as follows: "A tug is bound to use only reasonable and ordinary care and skill in conducting the tow, and is neither a bailee nor an insurer of the tow. * * * A suit to recover damages for loss of the tow is an action ex delicto and the burden is on the claimants to prove the negligence of the tug. A presumption of negligence does not arise merely from a showing that the tow has been damaged."

Since all the evidence was in the form of depositions, and an appeal in admiralty is in substance a trial de novo,[1] this court is free to make its own determination of the facts. Nevertheless, our review of the record puts us in thorough agreement with the trial judge in his findings (1) that the master of the "Lapwing"

exercised reasonable and ordinary care, caution, and maritime skill in the handling of the tow, and was justified in selecting the place of mooring as it was reasonably believed to be the only available safe berth; (2) that, considering his previously acquired knowledge and experience with the mooring site, he not only did not know but had no reason to know that the ebbing of the tide would create a situation of danger, or that at low tide the "Santee" would rest on a nest of submerged piling; and (3) that the master of the "Lapwing," therefore, could not reasonably have foreseen that any injury would likely befall the "Santee" due to the selection of Carrabelle Inlet as a mooring site.

As we are fully in accord with Judge Caillouet's able opinion in this case,[2] we affirm the judgment appealed from for the reasons he gave in rendering it.

Judgment affirmed.

---

[1] Reid v. Fargo, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156; The John Twohy, 255 U.S. 77, 41 S.Ct. 251, 65 L.Ed. 511.

