## W. HORACE WILLIAMS CO., Inc. v. THE WAKULLA et al.

### No. 1952.

United States District Court
E. D. Louisiana, New Orleans Division.
Jan. 21, 1953.

Jones, Waechter & Walker, George Denègre, W. B. Dreux, New Orleans, La., proctors for libelant.

Lemle & Kelleher, George B. Matthews, New Orleans, La., proctors for respondents.

WRIGHT, District Judge.

Libelant's Barge No. 503 was damaged while in tow of the Tug Wakulla and libelant has brought this action against the tug and its owner. The issues of fact and law having come on to be heard on the pleadings and proofs of the parties and due deliberation having been had, the court now makes the following findings of fact and conclusions of law.

#### Findings of Fact.

1. At all relevant times libelant was the owner of the barges known as 503, 403 and BSC 174. Barge 503 was employed by libelant as a pile driver barge. It has a model bow, a square stern and measures 129 feet in length, 52 feet in width and 9 feet in depth. There are two winches, one forward and one aft, on either end of the barge. The forward winch is of the Lambert two drum type and is used primarily in weighing anchor. Barge 403 is a standard deck barge of steel construction, 120 feet in length, 32 feet in width and 8 feet in depth. BSC 174, also of steel construction, measures 60 feet by 24 feet by 4 feet. It was used by libelant as a welding equipment barge.

2. Respondent was the owner and operator of the Tug Wakulla. During the early part of February 1950 a representative of libelant contacted respondent and engaged the service of the Tug Wakulla to tow the three barges above mentioned from New Orleans, Louisiana, to Port Aransas, Texas.

3. In accordance with the towage agreement libelant made up Barge 503 to Barge 403 with 503 in the lead. Wire cable from libelant's yard was used to couple the barges on the port side while the wire cable from the after winch of Barge 503 was used to make the starboard fastening. The cable from the winch was snubbed to bitts on Barge 503 before it was made fast to the bitts on Barge 403.

4. Respondent lashed BSC 174 to the stern of Barge 403 and then proceeded to use the Tug Ginger Ann to tow the barges to Mile 75 West in the Intracoastal Canal where the tow was turned over to the Tug Wakulla. The 503, 403 and BSC 174 were all dumb barges and no representative of libelant accompanied the tow on its voyage.

5. The Wakulla took the tow on a hawser and, because of its wheelwash on the model bow of The 503, experienced difficulty in towing. Accordingly, while in the protected water of the Atchafalaya River, the tow was re-made by the respondent and Barge 403 was placed in the lead with Barge 503 being coupled to its stern. The cable from the forward or anchor winch on Barge 503 was used to make the starboard fastening while either rope or cable lines were used to make the port connection. Apparently the cable from the

winch was not snubbed to a bitt on The 503 before being run to The 403 because this winch was pulled from its seat before the end of the voyage.

6. BSC 174 was made up at this time to the stern of 503. The cable from the after winch was used for this purpose. Thus made up, the tow proceeded without serious incident to Matagorda Bay which was entered at 6:30 on the morning of February 19, 1950.

7. That part of the Intracoastal Canal which runs through Matagorda Bay, a body of water 20 miles in length and 9 miles in width, is a dredged cut 125 feet in width and 12 feet deep. On either side of the canal is a spoil bank resulting from the dredging of the canal. At approximately 9 A. M., when The Wakulla and its tow had crossed about half of the bay, a nor'wester blew up. The master of The Wakulla reduced speed to slow and proceeded on his course. The nor'wester built up until about 11 A. M. when the wind was blowing 30 miles an hour with four foot waves in the bay. At this time it was noticed that the couplings securing one corner of The 503 to The BSC 174 had become loose. A deckhand, on going aboard the tow, saw that one of the forward bitts of BSC 174 had pulled out, so the coupling lines were taken to the after bitt. The master of The Wakulla testified that it was also discovered at this time that the coupling lines between 403 and 503 were in danger of breaking and that for lack of cable or rope, it was necessary to use the cable from the forward winch on The 503 to lash it to The 403. The master is probably in error in this testimony because he gave a written and signed statement concerning this incident on February 24, 1950, three days after it is alleged to have occurred, in which he states that it was during this incident he discovered "that the cable connecting the Driver Barge #503 on her starboard bow to the stern of the lead Barge #403 had pulled the drum of the winch it was connected to loose from it's (sic) moorings."

8. On leaving Matagorda Bay the tow proceeded into Port O'Conner where the tow was re-made sufficiently to proceed without further incident to Aransas Pass.

Conclusions of Law.

1. This Court has jurisdiction over the subject matter of this action and venue is properly laid in the Eastern District of Louisiana. 28 U.S.C. § 1333.

2. A towing vessel is not liable as an insurer of its tow or as a common carrier and the burden in this case is on the libelant to prove negligence by a preponderance of the evidence. Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699; 1932 A.M.C. 468; The Clarence L. Blakeslee, 2 Cir., 243 F. 365; The Lapwing, 5 Cir., 150 F.2d 214, 1945 A.M.C. 1076; Stall & McDermott v. The Southern Cross, 5 Cir., 196 F.2d 309, 1952 A.M.C. 876.

3. It is the duty of the towing vessel to see that the tow is properly made up and that her lines are sufficient and securely fastened. The Quickstep, 9 Wall. 665, 76 U.S. 665, 19 L.Ed. 767.

4. The doctrine of res ipsa loquitur applies to the circumstances of this case. The tow, composed as it was of the tug and dumb barges, was under the complete control of the respondent. The fact that during the voyage the anchor winch on The 503 suffered damage, obviously from strain improperly put upon it, gives rise to an inference of negligence which the respondent has failed to explain or rebut. The Webb, 14 Wall. 406, 81 U.S. 406, 20 L.Ed. 774; The Clarence P. Howland, 2 Cir., 16 F.2d 25, 1927 A.M.C. 564; Simkins v. R. L. Morrison & Sons, 5 Cir., 107 F.2d 121, 1940 A.M.C. 24; The Rocona, 9 Cir., 173 F.2d 661, 1949 A.M.C. 843.

5. The evidence shows that when the tow was re-made in the Atchafalaya River the cable from the anchor winch on The 503 was used in coupling that barge to The 403. The evidence further shows that this cable was not snubbed to bitts on The 503 before it was run to The 403. Consequently, in the rough passage, the strain on the cable caused by the movement of the barges in the seaway was absorbed by the winch on The 503 rather than by the bitts to which the cable should have been snubbed. It was this strain which unseated the winch and caused the damage.

6. The damage to the forward winch of The 503 was caused by the negligence of respondent in improperly coupling the barges. For this damage together with any loss of use of the vessel attributable thereto the respondent is responsible.

Let a decree be prepared pursuant to these findings.