ALCOA STEAMSHIP COMPANY, Inc., a corporation, Libelant,

v.

THE JOHN T. WALSH and Mobile Towing & Wrecking Company, Inc., a corporation, Respondents.

No. 2672.

United States District Court
S. D. Alabama, S. D.
Sept. 16, 1959.

John H. Tappan, of Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for libelant.

Alexander F. Lankford, III, of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for respondents.

DANIEL HOLCOMBE THOMAS, District Judge.

On November 13, 1957, the S/S Alcoa Corsair, while being shifted in Mobile Harbor, came into collision with a moored vessel, the S/S Josefina. Alcoa Steamship Company, as owner of the Corsair, filed a libel against the Tug John T. Walsh and its owners, Mobile Towing & Wrecking Company, seeking recovery for collision damages to the Corsair and the Josefina. The answer of the respondents admitted the collision, but asserted the defenses that the same was due to the fault of the Corsair and those in charge of her; that libelant had assumed the risk of well-known dangers; and that the collision was caused by *vis major*, or other circumstances beyond the control of the respondents.

The case came on for trial on the issue of liability only, and the Court, having considered the pleadings, the evidence adduced, and the law applicable, makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

On or about November 13, 1957, Alcoa Steamship Company requested Mobile Towing & Wrecking Company to furnish the services of three tugs to shift the Corsair, from the yard of Alabama Drydock & Shipbuilding Company, sternfirst, northwardly and upstream on the Mobile River to its regular berth at Pier North B–1, at the Alabama State Docks.

The Corsair is an ocean going passenger-cargo vessel maintaining a regular sailing schedule between Mobile, New Orleans and foreign ports of call. She was light, and she had no power of her own during the movement in question, prior to the collision.

Mobile Towing & Wrecking sent its harbor tugs, John T. Walsh, Richard Walsh and Commander to Alabama Drydock to shift the Corsair, and such tugs were standing by the Corsair at about 9:15 p. m., of November 13th.

The weather at this time was unsettled, with frequent squalls which created high winds and rain. A strong flood

tide of three to five miles per hour was running in the Mobile River.

Harbor Pilot Edward Martin was in charge of the shifting maneuvers, subject to the command of the master of the Corsair, Captain Joseph Castro. Both Pilot Martin and Captain Castro were familiar with the power and capability of the three tugs.

At the instance of Captain Castro and Pilot Martin, the shifting was delayed for about thirty minutes because of the adverse weather conditions.

It was decided by the Pilot and the Master to go ahead and attempt the shifting maneuver, and at about 9:50 p. m., with the assistance of the three tugs, the Corsair was undocked and taken out into the stream. With the Richard Walsh lashed up under the port bow of the Corsair, the Commander in a standby position alongside the Richard Walsh, and the John T. Walsh under the port quarter of the vessel, the flotilla proceeded upstream on the Mobile River toward the vessel's berth at Pier B. At that time, there was still some wind and rain, and the weather remained unsettled.

The contemplated maneuver called for the John T. Walsh to push the Corsair's stern westwardly toward and into the slip between Piers B and C. When the flotilla reached a point off the end of Pier B, upon the order of Pilot Martin, the John T. Walsh began to push the vessel's stern towards such slip.

At or about the time the Corsair was still out in the stream and aligned in a general east-west direction, with her stern near the mouth of the slip, and her starboard side facing the south, the flotilla was struck by a heavy rain squall, with strong southerly winds from 35 to 50 miles per hour. The effect of the combined force of wind and tide upon the side of the vessel caused her to fall down rapidly to the north and toward the Josefina, which was properly moored to the river end of Pier C, portside to, with her bow upstream.

Immediately upon seeing the Corsair beginning to lose ground, the master of the John T. Walsh, Captain George Dunn, gave three whistles, signifying full emergency ahead. The engineer immediately cut in the tug's by-pass, the effect of which was to supply additional live steam to the boilers, thereby developing maximum horsepower.

In spite of the efforts of all three tugs, with the John T. Walsh still pushing in emergency full ahead, the vessel continued to fall down toward the Josefina, and it became apparent that the John T. Walsh was in danger of being crushed between the port quarter of the Corsair and the starboard quarter of the Josefina.

Realizing this danger, Captain Dunn, a few moments before the collision, ordered the shifting gang on the stern of the Corsair to cast off the tug's headline. Upon observing that the John T. Walsh was preparing to leave its position, Pilot Martin, by oral command from his position on the bridge of the Corsair, ordered the John T. Walsh to stay in its position and keep pushing. Captain Dunn did not hear Pilot Martin give this order.

During the last few moments before the collision, Captain Dunn put the John T. Walsh into emergency full astern and backed out through the narrowing space between the sides of the vessels. The Commander, which had gone to a position just aft of midships on the port side of the Corsair in an effort to assist the John T. Walsh, was forced to leave its position in order to make room for the John T. Walsh to get out from between the two vessels.

At about 10:20 p. m., the port quarter of the Corsair collided with the starboard quarter of the Josefina, the angle of collision being about 45°.

At all material times, the John T. Walsh used all the power of which she was capable of developing.

The John T. Walsh held its position of peril under the port quarter as long as the safety of the tug and her crew would

permit. Its only avenue of escape was to go astern between the converging sides of the two vessels.

Immediately subsequent to the collision, the Corsair was anchored in midstream, it being necessary to put out two shots of chain to hold the vessel against the force of wind and tide. About thirty minutes later, with the vessel's steam raised to full power, and with the assistance of the three tugs, the vessel was made fast to the river end of Pier B, where one or more of the vessel's headlines were made fast to the dock. Such headlines were gradually slackened off, and the Corsair was ultimately docked at about midnight. At least fifty of the libelant's personnel employed as clean-up gangs had been awaiting the delayed arrival of the Corsair, in order that they might go aboard and get the vessel in shape for her voyage.

The Corsair departed Mobile the following morning at about eleven o'clock, bound for New Orleans.

### Conclusions of Law

■ I. The subject matter of this litigation, a marine collision, is within the admiralty and maritime jurisdiction of the court. 28 U.S.C.A. § 1333.

■ II. The proximate cause of this collision was the shifting of the Corsair, which was light and without power, in the face of known adverse weather conditions. Lafcomo-San Bernardo, D.C. La., 1926 A.M.C. 161.

" * * * common sense would seem to dictate that the vessel wait until conditions were such that safe passage could be made." Barbey Packing Corporation v. The S.S. Stavros, D.C., 169 F.Supp. 897, 900, 1959 A.M.C. 1542.

III. The John T. Walsh was fully justified and not negligent in leaving its position under the port quarter of the Corsair shortly before the collision. The evidence tends strongly to the conclusion that but for its leaving such position when it did, the tug would have been caught between the two vessels and crushed, with probable loss of life.

Standard Oil Co. v. Shipowners' & Merchants' Tugboat Co., 9 Cir., 17 F.2d 366; The Hercules, 2 Cir., 73 F. 255; The Charles Allen, D.C.N.Y., 23 F. 407.

■ IV. The libelant has not sustained the burden of proving negligent towage on the part of Mobile Towing & Wrecking Co. or the tug John T. Walsh. Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699; The Lapwing, 5 Cir., 150 F.2d 214, 1945 A.M.C. 1076; Stall & McDermott v. The Southern Cross, 5 Cir., 196 F.2d 309, 1952 A.M.C. 876.

Decree in accordance herewith.